OIL, CHEMICAL AND ATOMIC WORK-
ERS INTERNATIONAL UNION,
AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 75–4328

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 20, 1976.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Dennis M. Angelico, Victor H. Hess, Jr., New Orleans, La., for petitioner.

Paul J. Spielberg, John C. Rother, Attys., John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D. C., for N.L.R.B.

Lawrence J. Molony, Terence E. Hall, New Orleans, La., for intervenor Church Point Wholesale Gro. Co., Inc.

Before BROWN, Chief Judge, and GEWIN and MORGAN, Circuit Judges.

PER CURIAM:

This is a petition by the Oil, Chemical & Atomic Workers International Union, AFL–CIO (the Union) for review of an order of the National Labor Relations Board (the Board) reversing in part and affirming in part an initial decision of the Administrative Law Judge (ALJ). Since we find that the Board's order and findings are amply supported by the evidence, we deny the Union's petition for review.

The incidents which formed the basis of this case center around events occurring during negotiations for a new contract between the Union and the Company. Succinctly stated, after an extended period of bargaining between the two parties, negotiations reached an impasse, and the Union went on a strike which lasted for approximately a week. During the strike, both the Union and the Company engaged in activities which were later to become the basis of unfair labor practice charges brought by the Union against the Company. Also, during the strike, the Company replaced some of the strikers with new employees. When a new contract was negotiated, these replaced strikers lost their jobs.

When the ALJ first heard this case, he determined from the course of the parties' negotiations that the Company had bargained in bad faith, committing an unfair labor practice (U.L.P.) under § 8(a)(5) of the National Labor Relations Act [1]. He also found that the Company had coerced and restrained the employees in the exercise of their § 7 rights during the strike, thereby engaging in a § 8(a)(1) [2] U.L.P. The Company was found to have committed a second § 8(a)(5) U.L.P. by virtue of certain employer statements and activities which occurred during the strike. Finally, the ALJ determined that the Company's bargaining in bad faith precipitated the Union's strike, making the strike an unfair labor practice strike from its inception, and requiring the Company to replace *all* of the striking workers after the strike was over.[3] Because the Company had refused to reinstate all strikers, the ALJ found that the Company had committed a § 8(a)(3) [4] U.L.P.

Upon review of the ALJ's order and opinion, the Board reversed in part and affirmed in part. After a careful review of the entire bargaining history between the parties, the Board reversed the ALJ's finding of a § 8(a)(5) bad faith bargaining U.L.P. by the Company. In reviewing this part of the Board's order, we are required to accord substantial weight to the Board's expertise in its fact-finding capacity. *See Universal Camera Corp. v. N.L.R.B.*, 1951, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456, 467–68; *N.L.R.B. v. Herman Sausage Co.*, 5 Cir., 1960, 275 F.2d 229, 231. Under that standard of review, the Board's finding

---

1. 29 U.S.C.A. § 158(a)(5).

2. 29 U.S.C.A. § 158(a)(1).

3. Unfair labor practice strikers are ordinarily entitled to reinstatement even if the employer has hired permanent replacements. *See, e. g., Mastro Plastics Corp. v. N.L.R.B.*, 1956, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309, *rehearing denied*, 351 U.S. 980, 76 S.Ct. 1043, 100 L.Ed.

1495. An economic strikers, on the other hand, has no absolute right to reinstatement. If the employer has hired permanent replacements during the strike, he is not generally required to rehire the replaced striker. *See, e. g., N.L.R.B. v. Mackay Radio & Telegraph Co.*, 1937, 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381.

4. 29 U.S.C.A. § 158(a)(3).

that the Company bargained in good faith is amply supported by the evidence.

The ALJ's finding of a § 8(a)(5) bad faith bargaining U.L.P. by the Company was an express prerequisite for his later findings that the strike was an unfair labor practice strike from its inception and that the Company committed a § 8(a)(3) U.L.P. by refusing to reinstate all strikers.[5] Once the Board removed that prerequisite by finding the Company had bargained in good faith, the ALJ's findings that this was an unfair labor practice strike and that the Company had committed a § 8(a)(3) U.L.P. by refusing to reinstate all striking workers also had to fall.[6] The Board was therefore correct in automatically reversing this part of the ALJ's order.

Finally, the Board reversed the ALJ's finding that the Company committed a § 8(a)(1) violation by virtue of an incident occurring between a striking worker, a salesman of the company and the Company's General Manager, at a point far removed from the strike location and in connection with unprotected activities by the striker.[7] Our careful review of the record convinces us that the Board's findings that the striker was engaged in unprotected activity and that the remarks and actions by the salesman and by the General Manager did not rise to the level of a § 8(a)(1) U.L.P. were amply supported by the evidence.

Accordingly, we deny the Union's petition for review of the Board's order.

PETITION DENIED.

5. App. at 41–42.

6. *See* note 3, *supra.*

7. Briefly, what occurred was the following: The striker trailed the salesman, who had repeatedly crossed the Union's picket line, home with "sinister" motives. The General Manager noticed the striker tailing the salesman, so he followed in his car to investigate. When the striker reached the salesman's house, the three exchanged heated words and the salesman brandished a gun. The General Manager told the striker that he need not return to work, as he was "finished" there. However, the record does not indicate that the General Manager

later treated the striker any differently than he did the other strikers.

The record fully supports the Board's conclusions that the salesman was in no way acting as the representative of the company during this incident; that the striker's activities were unprotected activities; and that the General Manager's statement that the striker was "finished" did not, under the circumstances, rise to the level of a § 8(a)(1) U.L.P.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.