KANKAKEE–IROQUOIS COUNTY EM-
PLOYERS' ASSOCIATION, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

and

Truck Drivers, Oil Drivers, Filling Sta-
tions and Platform Workers Union, Lo-
cal 705, a/w International Brotherhood
of Teamsters, Chauffeurs, Warehouse-
men & Helpers of America, Interven-
ing-Respondent.

No. 86–1627.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1986.

Decided June 19, 1987.

Karl W. Grabemann, McDermott, Will &
Emery, Chicago, Ill., for petitioner.

John Burgoyne, Elliott Moore, N.L.R.B.,
Washington, D.C., William A. Widmer, III,
Carmell, Charone, Widmer & Mathews,
Ltd., Chicago, Ill., for respondents.

Before BAUER, Chief Judge,
COFFEY and EASTERBROOK, Circuit
Judges.

COFFEY, Circuit Judge.

On appeal, petitioner Kankakee-Iroquois County Employers' Association ("KICEA") seeks to set aside a decision of the National Labor Relations Review Board ("NLRB") holding that the intervening-respondent the Truck Drivers, Oil Drivers, Filling Stations and Platform Workers Union, Local 705 ("Local 705") did not violate section 8(b)(3) and 8(b)(1)(B) of the National Labor Relations Act, 29 U.S.C. §§ 158(b)(3), 158(b)(1)(B). We decline to set aside the decision of the NLRB and deny KICEA's petition for review.

I

The petitioner, the Kankakee-Iroquois County Employer's Association ("KICEA"), represents thirteen employers in their collective bargaining with the Truck Drivers, Oil Drivers, Filling Stations and Platform Workers Union, Local 705, Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local 705"). Between 1973 and 1983, KICEA and Local 705 agreed to adopt the provisions of the collective bargaining agreements negotiated between the Mid-America Regional Bargaining Association ("MARBA") and a group of six local unions, including Local 705. In 1983, KICEA requested separate negotiations with Local 705. The union complied with this request, and representatives of Local 705 met with representatives of KICEA on four occasions, May 17, June 17, July 8, and July 15, 1983. At each session, KICEA insisted that the labor contract reflect the unique economic conditions existing in the counties of Kankakee and Iroquois, Illinois. The union argues that it was attempting to improve and obtain uniform working conditions for workers employed by companies represented by KICEA and MARBA.

At the first bargaining session on May 17, 1983, Local 705 and KICEA each presented their contract proposals. Local 705's initial proposal to KICEA was the same as its proposal to MARBA. After the first session, a Local 705 negotiator stated that "there aren't going to be two contracts down in Kankakee, that is for sure." The comment was made in the context of the parties' scheduling of a second bargaining session.

On June 17, 1983, the two parties met for a second time. At this meeting, the Local 705 negotiator advised the KICEA representatives that it had reached a tentative agreement with MARBA and outlined the terms of that agreement. At this session, the union continued to press for uniform working conditions for workers employed in companies represented by KICEA and MARBA while KICEA sought concessions from Local 705. On June 26, 1983, the local unions, including Local 705, ratified the MARBA agreement. A majority of the members of the six local unions participating in the negotiations with MARBA approved the agreement even though a majority of the members of Local 705 were opposed. The contract was ratified when the votes of the members of the six local unions, including Local 705, were tallied. On July 8, representatives of Local 705 informed KICEA that its members would not agree to any concessions other than those embodied in the MARBA agreement. They further warned KICEA that failure to adopt the terms of the MARBA agreement might very well result in a strike. On July 11, the Azzarelli Construction Company, a Kankakee, Illinois contractor, not a member of KICEA, entered into a collective bargaining agreement negotiated separately with Local 705. This agreement was identical to the MARBA agreement except for a provision relating to pay for employees who were requested to and agreed to work during their lunchbreaks. Local 705 and the Azzarelli Construction Company agreed that the company could give straight time pay to workers working on their lunch breaks rather than pay at the time and a half rate.

On July 15, 1983, Local 705 representatives informed KICEA that its members had rejected KICEA's settlement proposal of July 8. The representatives of Local 705, in explaining their position, stated that they were authorized to offer and accept the same contract Local 705 had negotiated

with the Azzarelli Construction Company. Local 705 suggested to KICEA that it not push for additional concessions. KICEA, wishing to avoid a strike, agreed to accept the same terms as those offered to the Azzarelli Company and did not push for further wage concessions, believing that Local 705 was attempting to coerce it into an agreement by threatening a work stoppage.

Despite the fact that KICEA agreed to the contract, it did so only to stave off a strike and decided to file unfair labor practice charges with the NLRB stating that Local 705 had violated sections 8(b)(3) and 8(b)(1)(B) of the National Labor Relations Act, 29 U.S.C. §§ 158(b)(3), 158(b)(1)(B). KICEA alleged that Local 705 refused to bargain in good faith with KICEA and coerced KICEA in the selection of its collective bargaining representatives. The General Counsel of the NLRB, after reviewing the charges, issued a complaint. A hearing was held before an administrative law judge ("ALJ"), who found that Local 705 had not bargained in good faith and had thus violated section 8(b)(3) of the NLRA but that Local 705 had not coerced KICEA in the selection of its collective bargaining representative in violation of section 8(b)(1)(B) of the Act.

KICEA filed exceptions to the Administrative Law Judge's decision with the National Labor Relations Board, while Local 705 filed cross-exceptions to the ruling. The General Counsel filed a brief in support of the ALJ's decision. In its decision and order, the NLRB held that Local 705 did not violate the provisions of the National Labor Relations Act, 29 U.S.C. § 158(b)(1)(B), § 158(b)(3) and dismissed the complaint against Local 705. KICEA subsequently petitioned this court to review the order of the NLRB dismissing the complaint against Local 705.

## II

■ Initially, we note that an examination of relevant case law demonstrates that our review of NLRB decisions is limited with few exceptions. *See, e.g., International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, Local No. 1712 v. NLRB,* 732 F.2d 573, 577 (7th Cir.1984). "We accept the Board's factual findings if they are supported by substantial evidence on the record as a whole." *Id. See also Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951); *NLRB v. Harrison Steel Castings Co.,* 728 F.2d 831, 835 (7th Cir.1984). Further, we must "recognize the Board's special function of applying the general provisions of the [National Labor Relations] Act to the complexities of industrial life." *NLRB v. Erie Resistor Corp.,* 373 U.S. 221, 236, 83 S.Ct. 1139, 1149, 10 L.Ed.2d 308 (1963). "If facts are open to conflicting inferences, we are not at liberty to draw an inference different from the one drawn by the Board, even though it may seem more plausible and reasonable to us." *NLRB v. Millmen, Local 550,* 367 F.2d 953, 956 (9th Cir.1966) (quoted in *Queen Mary Restaurants Corp. v. NLRB,* 560 F.2d 403, 407 (9th Cir.1977)). Accordingly, "we should defer to reasonable Board conclusions." *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, Local No. 1712 v. NLRB,* 732 F.2d 573, 577 (7th Cir.1984). In proceedings before the NLRB, "[t]he General Counsel has the burden of proving an unfair labor practice allegation by a preponderance of the evidence, and if he fails to meet this burden the Board is required by § 10(c) [of the National Labor Relations Act] to dismiss the allegation." *Allbritton Communications Company v. NLRB,* 766 F.2d 812, 817 (3d Cir.1984) (citation omitted). *See also NLRB v. Transportation Management Corp.,* 462 U.S. 393, 401, 103 S.Ct. 2469, 2474, 76 L.Ed.2d 667 (1983). This court, has ruled that "[t]he Board's determination that the General Counsel has failed to meet his burden must be upheld unless the determination has no rational basis in the record." *Allbritton,* 766 F.2d at 817. *See also Ladies Garment Workers v. NLRB,* 463 F.2d 907, 919 (D.C.Cir.1972).

■ KICEA initially argues that Local 705 violated section 8(b)(3) of the National Labor Relations Act, 29 U.S.C. § 158(b)(3),

maintaining that Local 705 refused to bargain with KICEA in good faith and exhibited a definite intention not to budge from its position that KICEA accept the provisions of the MARBA contract as offered. The NLRB disagreed with KICEA's position that Local 705 had failed to bargain in good faith and held that Local 705 did not violate section 8(b)(3) as the Union's behavior, "on its face, suggest[ed] an 'open,' 'accessible' position." Section 8(b)(3) of the National Labor Relations Act, 29 U.S.C. § 158(b)(3) states:

> "(b) It shall be an unfair labor practice for a labor organization or its agents—
>
> (3) to refuse to bargain collectively with an employer, provided it is the representative of his employees subject to the provisions of section 159(a) of this title."

*Id.* Section 8(d), 29 U.S.C. § 158(d), of the Act defines "collective bargaining" stating:

> "For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession ..."

*Id.* "Section 8(d) of the Act, 29 U.S.C. § 158(d), requires that parties bargain with 'a real desire to come into agreement.' " *Allbritton Communications Company v. NLRB,* 766 F.2d 812, 822 (3d Cir.1985) (quoting *NLRB v. Insurance Agents' International Union,* 361 U.S. 477, 498, 80 S.Ct. 419, 432, 4 L.Ed.2d 454 (1960)). The statute, however, does not compel "either party to agree to a proposal or require the making of a concession." *NLRB v. American Insurance National Insurance Co.,* 343 U.S. 395, 404, 72 S.Ct. 824, 829, 96 L.Ed. 1027 (1951). "[T]he Act does not encourage a party to engage in fruitless marathon discussions at the expense of

frank statement and support of his position." *Id.* Moreover, "[a] party ... is entitled to stand firm on a position if he reasonably believes that it is fair and proper or that he has sufficient bargaining strength to force agreement by the other party." *NLRB v. Advanced Business Forms Corp.,* 474 F.2d 457, 467 (2d Cir. 1973) (quoted in *Atlas Metal Parts Co. v. NLRB,* 660 F.2d 304, 308 (7th Cir.1981)). A "refusal to bargain cannot be equated with 'refusal to recede from an announced position' advanced and maintained in good faith." *Church Point Wholesale Grocery Co.,* 215 N.L.R.B. 500, 502 (1974), *affirmed sub nom., Oil, Chemical and Atomic Workers International Union, AFL–CIO v. NLRB,* 538 F.2d 1199 (5th Cir.1976). However, this court has previously held that an adherence to unrealistically harsh positions throughout the bargaining process and an avoidance of any discussion of key economic issues constitutes a failure to bargain in good faith. *See, e.g., NLRB v. Wright Motors, Inc.,* 603 F.2d 604, 610 (7th Cir.1979).

■ In the present case, the parties made serious attempts to reach an agreement acceptable to both of them since each participant in the negotiations presented and discussed its proposals with the other side in four separate meetings lasting nearly two hours apiece. Local 705 agreed to bargain separately with KICEA but was desirous of reaching an agreement similar to the contract negotiated with MARBA. The ALJ and the NLRB both found that Local 705's behavior, on its face suggested an "open" and "accessible position." We are convinced that Local 705 did not adhere to unrealistically harsh positions since it made at least one concession from its original bargaining position, agreeing to straight time pay for workers working on their lunch breaks rather than attempting to have KICEA pay these workers at a time and a half rate. In light of these facts, we hold that there is substantial evidence in the record to support the NLRB's decision and order finding no violation on the part of Local 705 of section 8(b)(3) of the National Labor Relations Act.

## III

 KICEA also argues that Local 705 violated section 8(b)(1)(B) of the National Labor Relations Act because it compelled KICEA to adopt a contract that KICEA maintains was negotiated by Local 705 and MARBA. Thus, according to KICEA, Local 705 only bargained with MARBA and refused to consider KICEA's proposals. Both the ALJ and the NLRB rejected KICEA's argument in this regard, finding that Local 705 did not violate section 8(b)(1)(B). Section 8(b)(1)(B), 29 U.S.C. § 158(b)(1)(B), states:

> "(b) It shall be an unfair labor practice for a labor organization or its agents—
>
> (1) to restrain or coerce ... (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances;"

In *Florida Power & Light Co. v. International Brotherhood of Electrical Workers, Local 641*, 417 U.S. 790, 803, 94 S.Ct. 2737, 2743, 41 L.Ed.2d 477 (1974), the U.S. Supreme Court explained that the "specific concern of Congress [in enacting § 8(b)(1)(B)] was to prevent unions from trying to force employers into or out of multi-employer bargaining units." Thus, section 8(b)(1)(B) proscribes a union from coercing an employer into accepting a *particular bargaining representative*, but does not preclude a union from bargaining aggressively with an individual employer over the terms of a union contract even where the contract the union is bargaining for is substantially similar to the contract the union previously negotiated with a multi-employer bargaining unit.

The record is void of any evidence that Local 705 insisted that KICEA make any particular third party its collective bargaining representative. Local 705 bargained with KICEA directly. KICEA maintains that Local 705 violated section 8(b)(1)(B) since it insisted that KICEA accept a contract very similar to Local 705's contract with MARBA. The fact that Local 705 took this position initially in its bargaining with KICEA does not establish that Local 705 violated section 8(b)(1)(B) since it only insisted that KICEA accept a contract containing the same provisions as Local 705's contract with MARBA and did not pressure KICEA into selecting a particular bargaining representative. Local 705 did not violate section 8(b)(1)(B) since the statute, on its face, only prohibits union coercion in the context of the employer's selection of its bargaining representative and does not prohibit unions from seeking agreements substantially similar to those that they have already negotiated with other employers. Therefore, we agree with the ALJ and the NLRB and hold that Local 705 did not violate section 8(b)(1)(B), 29 U.S.C. § 158(b)(1)(B).

## IV

In light of the foregoing discussion, we deny KICEA's petition to review the decision and order of the NLRB.