**J. HUIZINGA CARTAGE COMPANY, INC. and Simpson Motor Transportation, Inc., Single Employer and/or Joint Employers, Petitioners, Cross–Respondents,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross–Petitioner.**

Nos. 90–2543, 90–2683.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 23, 1991.

Decided Aug. 28, 1991.

Robert E. Gordon, argued, Chicago, Ill., for J. Huizinga Cartage Co., Inc. and Simpson Motor Transp., Inc.

John C. Truesdale, N.L.R.B., Contempt Litigation Branch, Aileen A. Armstrong, William Mascioli, argued, N.L.R.B., Appellate Court, Enforcement Litigation, Washington, D.C., and Elizabeth Kinney, Ann Crane and John W. Peck, N.L.R.B., Region 13, Chicago, Ill., for N.L.R.B.

Before WOOD, Jr., CUDAHY and FLAUM, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

J. Huizinga Cartage Company, Inc. ("Huizinga") and Simpson Motor Transportation, Inc. ("Simpson") seek review of an order of the National Labor Relations Board ("Board"). The Board petitions for enforcement of that order. For the following reasons, we grant enforcement of the Board's order.

## I. BACKGROUND

Huizinga is a freight cartage business located in Chicago, Illinois. John Huizinga, Sr. ("Huizinga Sr.") is the founder and president of Huizinga. John Huizinga, Jr. ("Huizinga Jr.") is the vice-president of Huizinga. It is undisputed that Huizinga and Simpson share common ownership and operate as a single integrated business.[1]

The bargaining units representing the Company's employees are Locals 705 and 710 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Union"). Local 705 covers delivery of general freight to customers in the Chicago area and Local 710 has jurisdiction over the transportation of meat products in the Chicago area. The collective bargaining agreement for Local 705 provided that the bargaining unit covered "[a]ll employees engaged in deliveries and pickups made on behalf of or to any place of business of any Employer." The Local 710 agreement covered a bargaining unit defined as "[a]ll full-time and regular

1. We will hereafter refer to the joint Huizinga–Simpson enterprise as "the Company."

part-time meat drivers, employed at the Employer's Chicago, Illinois facility."

The drivers for the Company fall into one of three categories: (1) unionized employees who operate equipment owned by the Company; (2) nonunionized employees who operate equipment owned by the Company; and (3) independent contractors who operate their own equipment. The Company paid only union employees the wages and benefits conferred by the terms of the collective bargaining agreements. None of Simpson's drivers was a member of Local 705 or 710. The parties charging the Company with unfair labor practices—Floyd Richardson, David Toles, and Leonard Atkins—were not union members and were not paid wages or benefits in accordance with either collective bargaining agreement.

Richardson began working for Huizinga in 1983. At his initial interview with Huizinga Sr., Richardson indicated that he had a union withdrawal card from his former job and would like to renew his union membership. Huizinga Sr. responded that there was no union at Huizinga nor did he want one. Richardson later learned that some Huizinga employees were union members. Richardson testified that he then approached Huizinga Jr. and informed him that he would like to join the union in order to obtain medical benefits for his children. Huizinga Jr. replied that Richardson would be fired by Huizinga Sr. if he joined the union.

Toles was hired by Huizinga in 1984. During 1985, Toles contacted Local 705 and signed a union authorization card. Toles showed the card to Huizinga Jr. who told Toles he had done a "stupid" thing and that he should go home. A few days later Huizinga Sr. called Toles at home and said that things could be worked out and requested that Toles return to work. On July 31, 1986, Toles filed a charge with the Illinois Department of Human Rights alleging that he had suffered employment discrimination because he is black and that

the Company had discriminatorily denied him the benefits of union membership.

Atkins was also hired by Huizinga in 1984, but he did not express an interest in union membership until 1986. On August 14, 1986, Richardson, Toles, and Atkins went to the Local 705 union hall. Richardson entered the hall first and signed an authorization card which he had obtained from a union representative. Atkins then proceeded into the union hall and requested an authorization card. The individual Atkins spoke with told Atkins that another Huizinga employee had just been there and Atkins was not allowed to sign an authorization card. Atkins testified that he was referred to someone named "Coco"—presumably another union representative. Atkins then left the hall. After leaving the union hall, Richardson, Toles, and Atkins then proceeded to the Illinois Department of Human Rights where Richardson and Atkins filed charges against Huizinga alleging racial discrimination.

Several days later, Richardson showed Huizinga Jr. his union authorization card and Huizinga Jr. later warned Richardson that Huizinga Sr. was planning to fire him.[2] Following their trip to the union hall, the three charging parties received paychecks from Simpson rather than Huizinga. They had previously received checks from Huizinga Cartage. In late August 1986, Richardson, Toles, and Atkins were each given an employment application and a "Subcontractors Affidavit" to complete and sign. The affidavit represented that the signatory was working as a subcontractor, not as a salaried employee, and was therefore responsible for income and withholding taxes, workman's compensation insurance, personal health, and personal liability insurance.

Richardson spoke with Huizinga Jr. who told him that he could not work unless the subcontracting forms were completed. Huizinga Jr. informed Atkins that he would not receive his paycheck until the documents were completed. Although Atkins

---

**2.** Richardson also testified that he observed a letter from the Illinois Department of Human Rights on Huizinga Sr.'s desk and overheard

him say, "That son-of-a-bitch filed a nigger charge on me."

returned the documents unsigned, Huizinga Jr. released his paycheck. Shortly thereafter, Atkins quit his employment following an accident for which he refused to complete an accident report. Richardson and Toles both refused to sign the subcontracting forms—and both were told that there was no work available for them. On September 2, 1986, Richardson and Toles went to the Huizinga terminal and were again told by Huizinga Jr. that there was no work for them. Neither Richardson nor Toles worked for Huizinga following September 2, 1986.

Richardson, Toles, and Atkins filed unfair labor practice charges alleging that the Company had discharged them in violation of sections 8(a)(1) and (3) of the National Labor Relations Act ("Act"). 29 U.S.C. § 158(a)(1) and (3). The ALJ concluded that the Company violated sections 8(a)(1) and (3) of the Act by: (1) laying off Richardson and Toles; and (2) by directing that Richardson, Toles, and Atkins sign subcontractors affidavits in order to be allowed to work. The Company was also found to be in violation of section 8(a)(1) of the Act by threatening Richardson with discharge if he continued to seek union membership and benefits. The ALJ found that Atkins's discharge was not unlawful because the Company would have discharged him regardless of his involvement in union activity.[3]

The Board affirmed the findings, conclusions, and order of the ALJ with certain modifications. 298 N.L.R.B. 145 (1990). The Board amended the ALJ's conclusion with respect to Atkins by determining that the Company violated sections 8(a)(1) and (3) of the Act "by directing its employee Leonard Atkins about August 29 to sign subcontractor's affidavits on pain of Atkins not receiving his paycheck." Moreover, the Board omitted the ALJ's reference to Atkins in its conclusion concerning the Company's refusal to assign work to the charging parties absent completion of the subcontractors affidavits.

In order to remedy the violations, the Board affirmed the ALJ's order that the Company cease and desist from its unfair labor practices and from interfering in the exercise of its employees' rights under section 7 of the Act. 29 U.S.C. § 157. The Board also ordered the Company to offer reinstatement to their former jobs (or substantially equivalent positions) to Richardson and Toles, and to award them backpay. The Company was also ordered to make available to the Board all relevant personnel records and to post an appropriate notice to employees. The Company seeks review of the Board's order and the Board petitions for enforcement of the order. This court has jurisdiction pursuant to section 10(e) of the Act. 29 U.S.C. § 160(e).

## II. ANALYSIS

Decisions of the Board are reviewed deferentially by this Court. *National By-Products, Inc. v. NLRB*, 931 F.2d 445, 451 (7th Cir.1991); *NLRB v. Bliss & Laughlin Steel Co.*, 754 F.2d 229, 234 (7th Cir.1985). Section 10(e) of the Act provides that the factual findings of the Board are "conclusive" if they are supported by "substantial evidence on the record as a whole." 29 U.S.C. § 160(e); *Indianapolis Power & Light Co. v. NLRB*, 898 F.2d 524, 529 (7th Cir.1990). We may not displace the Board's determinations simply because we would have arrived at a different conclusion had the case been reviewed *de novo*. *Id.* at 529; *Bliss & Laughlin*, 754 F.2d at 234.

■ The Company first argues that the Board's finding that Richardson and Toles were employees rather than independent contractors was not supported by substantial evidence. Section 2(3) of the Act provides that independent contractors are exempt from NLRB jurisdiction. 29 U.S.C. § 152(3). The determination of an individual's status as an employee or independent contractor is a fact-based inquiry and focuses on "the employer's ability to control the purported employee." *NLRB v.*

---

**3.** The ALJ based this finding on credible testimony that Atkins had been responsible for an accident that occurred at a customer's premises on August 29, 1986, and that Atkins then refused to complete an accident report.

*O'Hare–Midway Limousine Serv.,* 924 F.2d 692, 694 (7th Cir.1991). The key factor in evaluating employer control is whether the employer governs the manner and means by which the work is accomplished. *Id.* at 695; *NLRB v. Sachs,* 503 F.2d 1229, 1233 (7th Cir.1974).

■ The Company owned, maintained, and insured the trucks driven by Richardson and Toles. The drivers' hours and routes were also controlled by the Company. In addition, when they were hired, both Richardson and Toles completed a standard employment application form. The Company stresses that it did not deduct income tax, social security tax, or unemployment compensation from Richardson's and Toles's paychecks as support for the proposition that they were independent contractors. However, as the General Counsel recognized, if an employer could confer independent contractor status through the absence of payroll deductions there would be few employees falling under the protection of the Act.

■ The Company also points to Toles's testimony that he had been an independent contractor in his previous job. This argument is meritless—his previous employment status is irrelevant for purposes of determining whether Toles was an employee of the Company. Based upon substantial evidence of the control exerted by the Company over the manner and means by which Richardson and Toles performed their duties, we agree with the Board's conclusion that they were employees covered by the Act.

The Company's next argument is that there was not substantial evidence to support the Board's finding that the Company violated sections 8(a)(1) and (3) of the Act. Section 7 of the Act, 29 U.S.C. § 157, guarantees employees "the right to self-organization, to form, join or assist labor organizations ..." and it is an unfair labor practice under section 8(a)(1) for an employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7." 29 U.S.C. § 158(a)(1). Section 8(a)(3) provides that it is an unfair labor practice for an employer

to "discriminat[e] in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3).

■ The Board's General Counsel bears the burden of proof, by a preponderance of the evidence, that the discharge or other interference with protected activity was "based in whole or in part on antiunion animus" or was "a substantial or motivating factor in the adverse action." *NLRB v. Dorothy Shamrock Coal Co.,* 833 F.2d 1263, 1266 (7th Cir.1987) (quoting *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 401, 103 S.Ct. 2469, 2474, 76 L.Ed.2d 667 (1983)). Once the General Counsel establishes that the employer was motivated by antiunion sentiment, the employer will be held in violation of the Act unless it can show that the same decisions would have been made absent the employee's protected activity. *O'Hare–Midway,* 924 F.2d at 696; *Bliss & Laughlin,* 754 F.2d at 234. The Company contends that the General Counsel failed to present substantial evidence of antiunion animus. The Company further asserts that even if antiunion animus was established, there was sufficient business justification for the termination of Richardson and Toles.

■ We will first examine whether there was substantial evidence supporting the Board's finding of antiunion sentiment on the part of the Company. The Company's arguments essentially attack the credibility determinations made by the ALJ and adopted by the Board in its decision. The Company argues that Richardson's testimony concerning conversations he had with Huizinga Jr. and Huizinga Sr. was not credible because the General Counsel failed to call other witnesses to corroborate Richardson's testimony. Although corroborating witnesses might have bolstered Richardson's testimony, they were not required in order for the ALJ to find the testimony reliable. The ALJ found that Richardson was a credible witness and discounted the testimony of Huizinga Jr. denying that he warned Richardson that he would be terminated upon joining the union. Determina-

tions of credibility made by the ALJ and the Board will not be disturbed by a reviewing court "absent extraordinary circumstances." *NLRB v. Berger Transfer & Storage Co.*, 678 F.2d 679, 687 (7th Cir. 1982). *See also National By–Products*, 931 F.2d at 451 ("Factual determinations may not be overturned unless the hearing officer completely disregarded sworn testimony, accepted testimony which was on its face unbelievable or other extraordinary circumstances existed").

■ The Company also argues that the ALJ should not have considered the signed union authorization cards as documentary evidence supporting the charging parties' testimony because neither Richardson nor Toles actually joined the union. However, acceptance of the Company's position would unduly narrow the scope of protection afforded by section 8(a)(1). The test for determining whether an employee's right of self-organization has been threatened " 'is not whether an attempt at coercion has succeeded or failed, but whether the employer engaged in conduct which reasonably tends to interfere with, restrain, or coerce employees in the free exercise of their section 7 rights.' " *NLRB v. Illinois–American Water Co.*, 933 F.2d 1368, 1374 (7th Cir.1991) (quoting *Berger*, 678 F.2d at 689). Therefore, in determining whether the Company unlawfully coerced the charging parties, it is irrelevant that they did not *actually* join the Union.

The Company does not dispute that the threats attributed to Huizinga Jr. and Huizinga Sr., if made, were violative of section 8(a)(1). The Company merely attacks the credibility determinations of the ALJ upon which the Board's decision was based. The Company has failed to present any "extraordinary circumstances" that would justify overturning the Board's decision. The General Counsel presented substantial evidence that the Company harbored antiunion animus.

We turn next to the Company's contention that the terminations would have occurred even if Richardson and Toles had not been engaged in protected activity. Although the General Counsel has estab-

lished antiunion animus, the Company may avoid a finding that it committed an unfair labor practice by proving that the discharges would have occurred "regardless of [its] forbidden motivation." *Transportation Management Corp.*, 462 U.S. at 403, 103 S.Ct. at 2475. The Company contends that Richardson and Toles were laid off because of business reverses, but the ALJ and the Board rejected this contention as unsupported by the record.

Huizinga Jr. and Lois Simosky, an office worker, both testified that during 1986 the Company lost substantial business from two major accounts—Libby and Lever Brothers. The Company asserts that this loss in business resulted in Richardson and Toles being "temporarily laid off." However, Simosky was unable to name any other driver that had been told not to report to work due to the alleged drop in business. In addition, Simosky testified that she made several unsuccessful attempts to recall Richardson and Toles to work. The ALJ did not credit this testimony, but instead found that Richardson and Toles made repeated calls to the Company and on September 2, 1986, they visited the terminal requesting work. The ALJ found the Company's business justification defense implausible and we agree.

The Company failed to produce any documentary evidence concerning the loss of the accounts—e.g., records reflecting the percentage of the Company's business represented by the two accounts or financial statements showing lost profits. The Company also failed to explain the timing of the discharges in light of Huizinga Jr.'s testimony that the business slowdown began prior to 1986 and continued into that year. Ample evidence was presented that the Company demanded that the charging parties execute subcontractors affidavits following their attempts to join the union. The Company then attempted to confer independent contractor status on Richardson and Toles by transferring them to Simpson Motor Transportation. Shortly following these events Richardson and Toles were denied work. There was also evidence that the Company hired additional drivers following its refusal to grant work to Richardson and Toles. We conclude that there was

substantial evidence to support the Board's finding that the discharges were unlawful under the Act.

 Finally, the Company challenges the Board's determination that the charging parties' backpay should be computed on the basis of wage rates provided for in the collective bargaining agreements. The ALJ found that Richardson and Toles should be made whole "by payment to them of sums of money equal to those they normally would have earned from the date of the discrimination to the date of reinstatement." However, the Board concluded that "the General Counsel has made a prima facie showing, which the [Company] has not rebutted, that the work performed by the discriminatees was bargaining unit work and that, had the [Company] not unlawfully discharged them for seeking bargaining unit status, their employment should have continued under the rates set by the collective-bargaining agreements." The Board further found that the backpay should be computed from the date of discharge since the backpay remedy is a result of the unlawful discharge.

The Board has broad discretion to fashion remedies and that authority is "subject to limited judicial review." *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 216, 85 S.Ct. 398, 406, 13 L.Ed.2d 233 (1964). *See also G. Heileman Brewing Co. v. NLRB*, 879 F.2d 1526, 1534 (7th Cir. 1989). The Company does not challenge the Board's finding that Richardson and Toles were engaged in work covered by the collective bargaining agreements—it merely argues that Richardson and Toles were independent contractors and therefore they were not entitled to bargaining unit coverage. Because Richardson and Toles were employees engaged in bargaining unit work, the Board was within its discretion in granting them backpay at bargaining unit wage rates.

For the foregoing reasons, we deny the Company's petition for review and grant the NLRB's application for enforcement.