PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

WEIS MARKETS, INCORPORATED, t/a
Mr. Z's Food Mart,
*Petitioner,*

v.

NATIONAL LABOR RELATIONS BOARD;
LOCAL 72, UNITED FOOD AND
COMMERCIAL WORKERS,
*Respondents.*

NATIONAL RETAIL ASSOCIATION,
*Amicus Curiae.*

No. 98-1892

NATIONAL LABOR RELATIONS BOARD
*Petitioner,*

v.

WEIS MARKETS, INCORPORATED, t/a
Mr. Z's Food Mart,
*Respondent,*

and

LOCAL 72, UNITED FOOD AND
COMMERCIAL WORKERS,
*Intervenor.*

No. 98-2017

On Petition for Review and Cross-application
for Enforcement of an Order
of the National Labor Relations Board.
(4-CA-23525, 4-CA-23775, 4-CA-23880)

Argued: January 27, 1999

Decided: September 11, 2001

Before WIDENER and MURNAGHAN,* Circuit Judges,
and HAMILTON, Senior Circuit Judge.

The petition for review of Weis Markets is granted in part and denied in part, and the petition of the Board for enforcement of its order is granted in part, granted as amended in part, and denied in part. Judge Widener wrote the opinion, in which Judge Hamilton concurred.

## COUNSEL

**ARGUED:** Robert Lewis, JACKSON, LEWIS, SCHNITZLER & KRUPMAN, Woodbury, New York, for Weis Markets. Robert Paul Joy, MORGAN, BROWN & JOY, Boston, Massachusetts, for Amicus Curiae. Julie Brock Broido, Senior Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Board. Carey Robert Butsavage, BUTSAVAGE & ASSOCIATES, P.C., Washington, D.C., for Intervenor. **ON BRIEF:** Roger S. Kaplan, Steven I. Farbman, JACKSON, LEWIS, SCHNITZLER & KRUPMAN, Woodbury, New York, for Weis Markets. Robert P. Morris, MORGAN, BROWN & JOY, Boston, Massachusetts, for Amicus Curiae. Frederick L. Feinstein, General Counsel, Linda Sher, Associate General Counsel, John D. Burgoyne, Acting Deputy Associate General Counsel, Margaret A. Gaines, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Board. Marc A. Stefan, BUTSAVAGE & ASSOCIATES, P.C., Washington, D.C.; David Silberman, BREDHOFF & KAISER, Washington, D.C.; Jonathan Hiatt, James Coppess, AFL-CIO, Washington, D.C., for Intervenor.

---

*Judge Murnaghan heard oral argument in this case but died prior to the time the decision was filed. The decision is filed by a quorum of the panel. 28 U.S.C. § 46(d).

**OPINION**

WIDENER, Circuit Judge:

Petitioner Weis Markets, Inc. ["Weis"] appeals the June 12, 1998, decision and order of the National Labor Relations Board [the "Board"] charging Weis with violations of sections 8(a)(1), (3) and (4) of the National Labor Relations Act [the "Act"] in conjunction with various actions taken by Weis including Weis' prohibition against leafleting in store parcel pickup area and adjacent parking lots by representatives of the United Food and Commercial Workers Local 72 (the Union) and Weis' dismissal of Thomas Cahill, a Weis employee associated with the Union movement. The Board cross petitions, seeking enforcement of its decision and order. We find substantial evidence to affirm some of the Board's determinations and orders in this case and grant enforcement in those respects. We do not, however, agree with other parts of the order. Consequently, we grant in part and deny in part the petition for review, and we vacate and amend portions of the Board's order.

I.

The Board's notice with which Weis has been ordered to comply is reproduced here, the parts being numbered for convenience and to use as a reference point.*

> The National Labor Relations Board has found that we violated the National Labor Relations Act and has ordered us to post and abide by this notice.
>
> 1) WE WILL NOT threaten that our stores will close and tell you that you will lose your jobs if you were to select United Food and Commercial Workers Local 72, or any other union, as your exclusive bargaining representative.
>
> 2) WE WILL NOT tell you that it would be futile to

---

*Changes which appear in part I (2) and (7) indicate errors in the Appendix which we have corrected.

select the Union to represent you because it could [do] nothing for you.

3) WE WILL NOT try to prevent you from engaging in discussions with *u*nion organizers by telling the organizers not to bother you,

4) WE WILL NOT promise you a wage increase in order to induce you into not supporting the Union, and

5) WE WILL NOT interfere with your right to wear Union buttons to work.

6) WE WILL NOT order representatives of United Food and Commercial Workers Local 72, who are engaged in peaceful handbilling protected by the Act to leave the sidewalk, parcel pickup, and parking lot areas adjacent to our stores located in Tunkhannock, Plains, and Scranton, Pennsylvania.

7) WE WILL NOT call the police to have the Union representatives removed . . . [from our] property, so long as the handbilling is conducted by a reasonable number of persons and does not unduly interfere with the normal use of the facilities or operation of businesses not associated with our stores.

8) WE WILL NOT discharge, file a criminal complaint, or otherwise discriminate against Thomas Cahill or any other employee because he supports or engages in activities on behalf of the Union.

9) WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights guaranteed you by Section 7 of the Act.

10) WE WILL, within 14 days from the date of the Order, offer Thomas Cahill full reinstatement to his former job or, if that job no longer exists, to a substantially equivalent

position, without prejudice to his seniority or any other rights and privileges previously enjoyed.

11) WE WILL make Thomas Cahill whole for any loss of earnings and other benefits resulting from his unlawful discharge, less any net interim earnings, plus interest.

12) WE WILL reimburse him for any expenses he may have incurred, with interest, resulting from the criminal complaint unlawfully filed against him.

13) WE WILL, within 14 days from the date of the Order, remove from our files any reference to Thomas Cahill's discharge, and petition the Pennsylvania State Police to remove from its files any reference to the criminal complaint filed against him, and

14) WE WILL, within 3 days thereafter, notify him in writing that this has been done and that the discharge will not be used against him in any way.

## II.

Weis' corporate activities include operating a chain of Pennsylvania grocery stores known as Mr. Z's Food Marts it had purchased in 1992. Sometime around or before January 1995, Mr. Z's employees received a mailing from Union organizers claiming enhanced job security in unionized stores and soliciting their support, and Weis placed into effect a generally applicable no-solicitation policy in its Mr. Z's stores. Weis posted cardboard and then metal signs, first inside the stores and then in the parking lots, informing both patrons and potential solicitors of the policy, which forbade solicitation on the store premises, the pickup area, and the adjacent parking lot.

The Union continued to seek to represent Mr. Z's employees, and in the contest that resulted, a number of events, significant to this litigation, occurred. Included among them were a series of mandatory employee meetings conducted by Mr. Z's manager, Stanley Zuba, directed at the potential Union representation; a series of attempts by

Union organizers to leaflet employees outside of and adjacent to Mr. Z's stores; and the discharge and claimed filing of a criminal complaint against one Cahill, an employee, for allegedly threatening Mark Adamsky, a Mr. Z's assistant manager, by the mention of a book received by Cahill's brother which discussed the preparation of car bombs. Upon hearing testimony regarding these incidents, the Administrative Law Judge determined that Weis violated the Act through Zuba's comments to employees at the mandatory meetings, through the prohibition of Union leafleting, and through the dismissal of Cahill following the alleged threat.

Weis has raised several issues in its petition for review. They include: whether Weis could bar solicitation of its employees by employees of the Union on its parcel pickup area, sidewalks and adjacent parking lots; whether substantial evidence supported the Board's finding that Weis unlawfully threatened to close one of its stores in the event that employees there successfully unionized; whether substantial evidence supported the Board's finding that Weis unlawfully told its employees that choosing to unionize would be futile; whether substantial evidence supported the Board's finding that Weis unlawfully promised its employees a pay increase; whether substantial evidence supported the Board's finding that Weis Market unlawfully interfered with a conversation between Cahill and Union organizers; whether substantial evidence supported the Board's finding that Weis unlawfully fired Cahill and filed criminal charges against him; whether the ALJ erred by failing to exclude Cahill along with the other witnesses from the proceedings following his testimony; and whether substantial evidence supported the Board's credibility determinations because of bias of the ALJ.

III.

Many of the issues raised by Weis concern factual determinations made by the Board. In reviewing the Board's factual determinations, we examine the record as a whole for substantial evidence to support the Board's findings. *NLRB v. CWI of Maryland, Inc.*, 127 F.3d 319, 330 (4th Cir. 1997). Substantial evidence amounts to "more than a scintilla, but less than a preponderance." *Pirelli Cable Corp. v. NLRB*, 141 F.3d 503, 514 (4th Cir. 1998). When faced with two fairly conflicting views, we must defer to the Board's determination rather than

substitute a determination of our own. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *NLRB v. Daniel Construction Co.*, 731 F.2d 191, 193 (4th Cir. 1984). We review the fact finding of the Board in the light of that deferential standard.

## A.

Weis claims that the General Counsel failed to present substantial evidence on behalf of the Union's claim that Zuba unlawfully threatened to close one of Weis' Mr. Z's stores if the employees were to unionize. See part I(1). In support of its conclusion, the Board relied on the testimony of four witnesses: Cahill, Lou Burroughs, Tom Miller and Sue Bonavita, all of whom were employees of the store in question at the time the comment was allegedly made. All four testified to the effect that Zuba threatened to close the store, eliminating their jobs, in the event that the employees acquired Union representation. Despite the testimony of seven witnesses relied on by Weis in this regard, the ALJ credited the General Counsel's witnesses as "spontaneous and detailed" and "not elicited through leading questions." The ALJ saw the witnesses and heard them testify, and the record does not support a reversal of his credibility determination.

## B.

Weis also claims that the General Counsel failed to present substantial evidence that Weis unlawfully commented on the futility of any decision on the part of its employees to unionize. The ALJ relied on the credited testimony of Cahill, Burroughs, Miller, and Bonavita in concluding that Weis violated section 8(a)(1) of the Act by making such comments. While an employer may even predict the precise effect of Unionization, when coupled with the threat of plant closure, the Board is justified in concluding, as here, that an unfair labor practice occurred. See *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618 (1969). See parts I(1) and (2).

## C.

Weis further contends that there is insufficient evidence to support the Board's finding that Weis improperly promised to give its

employees a raise in hopes of persuading them against unionization. See Part I(4). On this count, the ALJ relied on the testimony of Weis' witnesses in concluding that, in the context of a mandatory employee meeting convened to discuss the Union's attempts to organize, Zuba indicated to employees that he was "putting in for a raise." Zuba himself testified to this as did Davis, Dudek, and Saylor, all members of store management.

Where Weis' claims and the ALJ's findings diverge, however, is as to whether steps to implement the wage increase had been taken prior to the meeting in question, increasing the likelihood that the raise was merely a routine employee benefit. While Weis claims the request was routine, the ALJ credited testimony that Zuba "was putting in for a raise" to indicate future action and was intended to discourage employees from joining the Union. This inference was permissible, and we decline to upset it.

### D.

Weis' next contention regarding the Board's failure to meet the substantial evidence standard surrounds its finding that Weis unlawfully interfered with a discussion between Cahill and Union organizers. Zuba testified that he approached Union organizers outside of the store and instructed them not to bother Cahill, who was off duty at the time. The testimony of Cahill and Chincola, a Union organizer, confirms this scenario adding that Zuba asked Cahill if the organizers were bothering him. Cahill replied that they were not. The scene took place 10-15 feet from the entrance to the store.

Because Chincola and the other organizers were not business invitees, Zuba had a right to do as he did. See part V, infra. The finding of the Board in this respect is vacated.

### E.

Another question raised on appeal is the content of the requirement of the Board that Weis be ordered not to discharge Cahill or file a criminal complaint or otherwise discriminate against Cahill because he supports or engages in activities on behalf of the Union. See part

I(8). Weis' defense to this order is that it did not file a criminal complaint but only reported the matter to the police. While the record shows that Weis did not, in fact, file a criminal complaint, it did claim that it discharged Cahill because of conduct reported to the State Police—the possession of a book on the making of bombs—and a veiled threat that one of Weis' employees took as true. While the record supports that Cahill was discharged on account of his Union activities, substantial evidence does not support that Weis filed a criminal complaint, merely reporting the same to the State Police, who apparently investigated and did not prosecute.

The facts which govern our decision on this point were accepted by the ALJ as the correct premise, see Appendix, p. 924, although he apparently did not believe them. Adamsky, a Weis supervisor, overheard Cahill tell Burroughs, a fellow employee, that he and his brother had gotten a book on how to make a car bomb and described what happens to the [human] body after such a bomb goes off. Adamsky then asked Cahill if Cahill was threatening him [Adamsky]. Cahill simply walked away without saying anything. Adamsky took this as a threat.

On that state of facts, Weis cannot be faulted by reporting the matter to the State Police. While the State Police did not prosecute, we do not believe Weis can be faulted because some of its supervisory personnel reported the matter to the police.

That Cahill was discharged on account of his activities in behalf of the union, indeed, is hardly contested on review, and the decision of the ALJ declining to accept the car bomb affair as the company's reason for Cahill's discharge is also supported by the record. But preventing Weis from reporting the matter to the police goes too far toward interfering with legitimate law enforcement, and we will amend the Board's order to give effect to this aspect of our decision.

### F.

Another challenge that Weis makes to the Board's fact findings takes the form of a broad based opposition to the ALJ's credibility determinations accusing him of a general bias against all of Weis' witnesses. "Determinations of credibility made by the ALJ and the

Board will not be disturbed by a reviewing court 'absent extraordinary circumstances.'" *J. Huizinga Cartage Co., Inc. v. NLRB*, 941 F.2d 616, 620-21 (7th Cir. 1991) (quoting *NLRB v. Berger Transfer & Storage Co.*, 678 F.2d 679, 687 (7th Cir. 1982)). We find no such extraordinary circumstances here.

G.

Weis also claims that the opinion of the ALJ is flawed because the ALJ was biased. In our opinion, this claim is not supported by the record.

IV.

Weis also contends that the ALJ erred when it failed to exclude Cahill from the proceeding during testimony about events which were the subject of Cahill's testimony. The General Counsel had appointed Cahill as his representative to be present during the trial but declined to exclude him as a discriminatee, according to Board precedent, "during that portion of the hearing when another of General Counsel's or charging party's witnesses is testifying about events to which the discriminatees have testified, or will or may testify." *Unga Painting Corp.*, 237 NLRB 1306, 1307 (1978).

The General Counsel called Cahill as his first witness and Cahill was not thereafter recalled. While Cahill did hear the testimony of the subsequent witnesses, the claim of Weis that the ALJ's credibility resolutions were compromised has not been demonstrated except for the naked claim. No valid reason has been given to order a retrial and we decline to do so. This is not to say that we approve the ALJ's departure from Board precedent, for we do not.

V.

The last item that we discuss is whether the eviction of the organizers from the sidewalk, parcel pickup and parking lot areas adjacent to Weis' stores was lawful. See Part I (3)(6)(7).

As noted, about the first of the year of 1995, the union solicitation of Weis employees began. About that time also, Weis imposed on the

three stores involved here its previous existing policy of no solicitation, posting at first, on January 3rd, cardboard signs to that effect in the stores and later on March 13 metal signs to that effect. The cardboard signs forbade solicitation on the premises and the outside signs forbad solicitation in the parking lot. At the time the union organizers were prevented from their handbilling, on January 23 and 24, the Weis lease at Tunkhannock provided that Weis had the nonexclusive right to use the common areas, meaning those outside the premises of the store proper, for itself, its customers, agents and invitees. The Scranton lease provides that Weis, its agents, servants, employees, invitees and licensees shall be entitled to use for parking, loading, ingress and egress and all other lawful purposes the parking areas, such use to be in common with the other tenants. The Plains lease is described in the opinion of the ALJ as providing that automobile parking areas, driveways, entrances or exits, service drives, pedestrian side walks and ramps are common areas for the general use in common with other tenants and agents, employees, customers and invitees. So the conclusion of the ALJ that Weis held at most a nonexclusive easement over the common areas is correct as far as it goes, but "at most" is unauthorized downgrading, and we do not consider it.

At this point we underscore that it is admitted that the union had other reasonable alternative means of communicating with Weis employees. We further especially note that on March 13th and June 6th and 15, 1995, the three leases were amended so that Weis was given the right to prevent trespassing, including handbilling, on the sidewalks, parcel pickup and parking lot areas adjacent to all of the stores involved in this case. This was well before the trial which was in January 1996 and before the complaint was filed by the regional director on July 27, 1995.

On these facts, the ALJ found that the no solicitation rule imposed by Weis was valid under *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 108 (1956), but was only enforceable as to the areas under which Weis had "exclusive control," meaning "the stores themselves." Because the organizers had been evicted on January 23rd and 24th before the changes of March 13th, June 6th and 15th giving Weis the explicit right to forbid them access to the premises, he found Weis had committed an unfair labor practice by their eviction. The question

which is before us is whether or not an unfair labor practice was committed as set out just above.

Whether Weis had this right is a matter of Pennsylvania real estate law. In the case of *Logan Valley Plaza, Inc. and Weis Markets, Inc. v. Amalgamated Food Employees Union, Local 509, AFL-CIO, et al.*, 227 A.2d 874 (Pa. 1967), a situation much the same as that present here was presented to the Pennsylvania Court. Weis leased its store from Logan Valley and it consisted of the store, a porch, and directly in front of the porch a parcel pickup zone. The parking area was owned by Logan and provided for the use of Weis, Sears Roebuck, and future occupants of other store properties in the shopping center. The employees of Weis were not union members and were not picketing, but shortly after the store opened, four pickets from Local 590 appeared proclaiming that Weis was non union, that its employees were not receiving union wages or other union benefits, and appealed to friends of the pickets and members of organized labor not to patronize Weis but to patronize other stores which had union employees. At Weis' instance, the Court of Common Pleas of Blair County issued a preliminary injunction restraining the defendants from picketing on the supermarket's porch, in the pickup zone, on the mall parking lot areas, or the entrances thereto and the exits therefrom. The Court found as a fact in that case that the Weis and Sears lessees "may be said to have reciprocal rights or easements therein [the common areas] for the use of their business invitees and employees." *Logan Valley Plaza, Inc. and Weis Markets, Inc. v. Amalgamated Food Employees Union, Local 509*, No. 1915, Court of Common Pleas of Blair County. On appeal the Supreme Court of Pennsylvania affirmed in *Logan Valley Plaza*, cited above. The Court construed the right of Weis to exclude stating:

> The invitation to the public, extended by the operation of the parking areas and parcel pickup areas was limited to such of the public who might benefit Weis' and Logan's enterprises, including potential customers as well as the employees of the shopping center concerns.

227 A.2d at 877.

The Court noted in addition that Weis had taken special precautions against an indiscriminate use of its property and that a general

invitation to certain classes of persons to use the premises and the exclusion of certain other classes of persons from such use was fully consistent with the right of a property owner to the use and enjoyment of his property.

In affirming the Court of Common Pleas the Pennsylvania Court further stated that:

> While *both Weis and Logan* granted to a segment of the public certain rights in connection with the use of their property, such cession of rights did not constitute a grant of all their rights to all the public. To hold that these property owners solicited the use of their property by persons who were attempting to discourage the public from patronizing the store facilities lacks any basis in law or common sense. These pickets, even though engaged in picketing of a peaceful nature, had no right or authority whatsoever to utilize the private property of Weis and/or Logan for such picketing purposes; such use constituted a trespass which very properly was restrained. (italics added)

227 A.2d at 389.

The United States Supreme Court then granted a writ of certiorari and reversed the Supreme Court of Pennsylvania, holding that the Logan Valley Mall was the functional equivalent of a "business block" for First Amendment purposes, so it should have been treated in the same manner. That opinion, however, was overruled in *Hudgens v. NLRB*, 424 U.S. 507 (1976), which held that the owner of a shopping center could prevent picketing on his private property on account of a strike of the employees of one of the tenants in the shopping center. That overruling was recognized in *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149 (1978), in which the Court decided that it had adopted Justice Black's position in *Logan* which was that in order to treat private property as public, the private property had to take on "*all* the attributes of a town." (italics in original). From Justice Black's dissent in *Logan Valley*, 391 U.S. at 332, quoted in *Flagg Bros.*, 436 U.S. at 159.

Thus, the union organizers in this case not being members of the public who might benefit Weis' enterprise, including potential cus-

tomers and employees, their uninvited intrusion on the private property, the easement of Weis, was unlawful under the real estate law of Pennsylvania, which prevails here.

We should add that the reasoning of Justice Marshall in the dissenting opinion in *Hudgens* is consistent with that of the Pennsylvania Court:

> It is irrelevant, in my view, that the property was owned by the shopping center rather than by the employer. The nature of the property interest is the same in either case.

*Hudgens v. NLRB*, 424 U.S. 507, 525, 532, n. 5, Justice Marshall, dissenting, (1976).

Those aspects of the order which require Weis to renounce the authority to prevent handbilling by the union organizers are not enforced.

## VI.

By reference to part I of this opinion, we indicate which parts of the Board's order are enforced, enforced as amended or denied.

*Enforced*:

Part I (1), (4), (5), (9), (10), (11), (14)

*Enforced as amended*:

Part I (2) - Amended only by adding to the order "when coupled with the threat of plant closure."

Part I (8) - Amended only by removing the words "file a criminal complaint."

Part I (13) - Amended only by removing the words "and petition the Pennsylvania State Police to remove from its files any reference to the criminal complaint filed against him."

*Enforcement Denied*:

Part I (3), (6), (7), (12)

> *THE PETITION FOR REVIEW IS ACCORDINGLY*
> *GRANTED IN PART AND DENIED IN PART, AS IS*
> *THE PETITION OF THE BOARD FOR ENFORCEMENT,*
> *AND THE ORDER OF THE BOARD IS AMENDED*