CHICAGO TRIBUNE COMPANY, Petitioner, Cross–Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent, Cross–Petitioner,

and

Local 134, International Brotherhood of Electrical Workers, AFL–CIO, Intervening Respondent.

Nos. 91–1100, 91–1284.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 5, 1991.

Decided May 7, 1992.

Douglas A. Darch (argued), Mark L. Keenan, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for Chicago Tribune Company.

Elizabeth Kinney, N.L.R.B., Chicago, Ill., Aileen A. Armstrong, Howard E. Perlstein, David A. Fleischer (argued), N.L.R.B., Appellate Court, Enforcement Litigation, Washington, D.C., for National Labor Relations Bd.

Robert E. Fitzgerald, Jr., Chicago, Ill., for Local 134, Intern. Brotherhood of Elec. Workers.

Before WOOD, Jr.,* and MANION, Circuit Judges, and ROSZKOWSKI, Senior District Judge.**

* Judge Wood, Jr. assumed senior status on January 16, 1992, which was after oral argument in this case.

** The Honorable Stanley J. Roszkowski, Senior District Judge for the Northern District of Illinois, is sitting by designation.

HARLINGTON WOOD, Jr., Circuit Judge.

On February 3, 1989, the Chicago Tribune Co. ("Tribune") discharged one of its electricians, Martin Kaczmarek, for "repeated violations of company and departmental policies." The Tribune's letter to Kaczmarek cited four specific incidents: (1) a suspension without pay on October 12, 1988, for "refusing to respond to an emergency situation," (2) a warning on November 10, 1988, for "an unauthorized absence from your work area," (3) a warning on January 10, 1989, for "neglect of duties and taking an unauthorized break," and (4) another suspension without pay on January 18, 1989, for "the use of vile, obscene and profane language, and offensive and abusive behavior toward a management representative" in violation of established company policy. Kaczmarek had worked for the Tribune since 1983, was a member of Local 134, International Brotherhood of Electrical Workers, AFL–CIO ("Union"), and had been a union steward since 1986. He actively and openly campaigned for union representation, was a union observer at the representation election on October 4, 1988, and a few days before the election had worn a T-shirt to work bearing the inscription, "October 4th vote yes." Both Kaczmarek and his union petitioned the NLRB (or "Board") for relief, claiming he had been disciplined and then discharged because of his union activities, a violation of section 8 of the National Labor Relations Act. 29 U.S.C. § 158(a)(1), (3).

After a hearing at which evidence was presented and witnesses testified, an administrative law judge ("ALJ") found Kaczmarek's discipline and discharge had been "pretextural" or, alternatively, the result of "dual motive." A three-member panel, appointed by the Board, reviewed the ALJ's decision, the exceptions and supporting brief filed by the Tribune, and the response brief filed by General Counsel. On behalf of the NLRB it affirmed, with minor exceptions, the ALJ's rulings, findings, and conclusions and adopted his recommended order to reinstate Kaczmarek with back pay. The Tribune, because it is located in Chicago, Illinois, petitioned this court for review, and the NLRB filed a cross-petition for enforcement. 29 U.S.C. § 160(e), (f). The Union petitioned as an intervenor in support of the NLRB.

■ Generally the conclusion that discipline or discharge constitutes an unfair labor practice, that it is pretextual or the result of dual motive, can be reached only after a *prima facie* showing by a preponderance of the evidence that the employer acted because of antiunion animus, antiunion motive.[1] *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983); *J. Huizinga Cartage Co. v. NLRB*, 941 F.2d 616, 620 (7th Cir.1991); *Southwest Merchandising Corp. v. NLRB*, 943 F.2d 1354, 1359 (D.C.Cir.1991); 29 U.S.C. § 160(c). Because the Board did not expressly find antiunion animus and because evidence is neither cited in the Board's Decision and Order nor contained in the record that would support such a finding, we deny enforcement, grant review, and vacate the order of the NLRB.

## BACKGROUND

What is not in the ALJ's decision and record is materially more significant than what is. Nevertheless, to give some flavor of the controversy we summarize the four events cited in the Tribune's letter that led to Kaczmarek's discharge.

As a Tribune electrician, Kaczmarek was assigned to the Emergency Response Team, received training in firefighting and other emergency procedures, and, consequently, was expected to respond promptly to emergency situations. In the early hours of October 5, 1988, someone reported the smell of smoke in the press room. A supervisor, Robert Sweet, went to Kaczma-

---

**1.** There is a limited class of cases where an employer's conduct so inherently destroys the employee's interest that "the Board may find an 8(a)(3) violation without establishing that the employer acted with an unlawful motive." *Es-* *mark, Inc. v. NLRB*, 887 F.2d 739, 747 (7th Cir.1989) (citing *NLRB v. Great Dane Trailers, Inc.*, 388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967)). The NLRB does not argue this case is in that class, nor does it appear to be.

rek where he was working in the reel room and asked him to investigate. According to the Tribune, his response was to tell Sweet, "go up to the shop and see my supervisor." According to Kaczmarek, however, he responded that he did not smell smoke, advised Sweet to contact the supervisor, and then began investigating. The parties agree there was no fire; rather the odor was due to a recently turned on heating system. Subsequently, the Tribune suspended Kaczmarek for one week without pay and issued a written, "last and final warning" for his "refusing to respond to an emergency situation."

On November 4, a few minutes after the start of his early-man shift assignment at 10 PM, Kaczmarek was observed eating in an alcove in the back of the fifth floor electrician's shop. The Tribune claimed Kaczmarek was taking an unauthorized, early lunch; he, in turn, maintained it was only a snack, that he had determined no work needed to be done at the moment, that he had his supervisor's permission, and that many other employees had done so without retribution, in large part because the Tribune cafeteria had been closing at 11 PM. The Tribune responded that Kaczmarek did not have permission and that by November 4 the cafeteria had extended its hours to 2 AM. The Tribune, maintaining the alcove was not part of his assigned work area that shift, warned Kaczmarek for "an unauthorized absence" from his work area.

Shortly after 6 AM, January 10, 1989, a shift supervisor, John Cannizzo, noticed that an overload light on the roll-conveyor system was lit. Initially believing someone was working on the problem, Cannizzo took no action. Soon he realized no one was; thus, he went to the nearby break room where he had seen three employees, including Kaczmarek, and asked them to investigate. None took any action, and Kaczmarek is claimed to have told Cannizzo to call his supervisor. All three employees were subsequently disciplined, warned, by the Tribune for neglect of duty and taking an unauthorized break. Upon further review, the Tribune rescinded two of the warnings: one of the workers had not been assigned

to answer trouble calls that day, and the other was his apprentice, obligated to follow a journeyman's instructions. The Tribune kept Kaczmarek's warning in effect, noting that one day before the incident Kaczmarek had requested the next day off, although company policy, known to Kaczmarek, required that days off be scheduled at least one week in advance.

Lastly, Kaczmarek is alleged, in the words of the NLRB's brief, "to have used vulgar language to [a supervisor, Ed] Cook," shortly after 11 PM, January 16, 1989. According to the Tribune, Kaczmarek reported on time for his 11-PM shift; 15 minutes later he and another employee went to the appropriate break room for a smoke. Supervisor Cook was conducting a meeting with his workers in that room at the time; he explained no other room had been available for the meeting and asked the two to leave. One did, but Kaczmarek remained and argued with Cook about the use of the room, thus, disrupting the meeting and, according to the Tribune, upsetting Cook's crew to such an extent that he was forced to end the meeting. Cook testified that Kaczmarek said that "I ought to get my shit together and why the fuck can't I smoke, and the fuck it won't." Caroline Gray, a member of Cook's crew who had been at the interrupted meeting, testified:

> [Kaczmarek] said, "Fuck, why you all can't use the other canteen for your meeting? This is the only damn smoking area here." And then he was going to go out the door and he said, "Fuck, shit."
>
> . . . . .
>
> As he was getting ready to leave I heard him say, "Mother fuck," and he just walked out.

The Tribune views this use of profanity as a direct violation of its harassment policy, and two witnesses testified that employees other than Kaczmarek had been discharged for using abusive or profane language toward a supervisor.

## ANALYSIS

The parties do not dispute and our review of the relevant facts shows that we

have jurisdiction. The complaint before the NLRB alleges and the Tribune admits it is an employer, engaged in operations affecting interstate commerce, within the meaning of the Act, and, similarly, the Union is a labor organization within the meaning of the Act. 29 U.S.C. § 152(2), (5), (6), (7). A violation of the Act is alleged; the order of the NLRB is final; and the Act expressly grants us jurisdiction to review or enforce final orders of the NLRB. 29 U.S.C. §§ 158(a)(1) and (3), 160(e) and (f).

■ Judicial review of a Decision and Order of the NLRB, whether initiated by a petition for enforcement or by a petition for review, is governed by sections 10(e) and 10(f) of the Act: we must uphold the Board's decision "if its factual findings are supported by substantial evidence on the record as a whole and if its legal conclusions have a reasonable basis in the law." *NLRB v. George Koch Sons, Inc.*, 950 F.2d 1324, 1330 (7th Cir.1991) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)); 29 U.S.C. § 160(e), (f). Substantial evidence, in turn, is "such relevant evidence as a reasonable mind might accept as adequate to support the Board's conclusion." *Mary Thompson Hospital v. NLRB*, 943 F.2d 741, 745 (7th Cir.1991) (quotation marks and citations omitted). While we may not dabble in fact-finding or displace reasonable determinations simply because we would reach a different conclusion, a merely cursory review is not adequate, for we must take into account the entire record, "including the evidence opposed to the Board's view from which conflicting inferences reasonably could be drawn." *Koch*, 950 F.2d at 1330; *Inland Tugs v. NLRB*, 918 F.2d 1299, 1307 (7th Cir.1990) (quotation marks and citations omitted).

■ An employer engages in an unfair labor practice when it interferes with, restrains, or coerces employees in the exercise of rights guaranteed in section 7 of the Act, 29 U.S.C. § 157, "by discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor union...." 29 U.S.C.

§ 158(a)(1), (3). Union activism is a protected right, and an employer cannot discharge an employee for exercising rights guaranteed by the Act. Union activism, however, is not an impenetrable shield against discharge, and the Act itself "does not give union adherents job tenure." *NLRB v. Loy Food Stores, Inc.*, 697 F.2d 798, 801 (7th Cir.1983); *Avecor, Inc. v. NLRB*, 931 F.2d 924, 928 (D.C.Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 912, 116 L.Ed.2d 812 (1992). A company may discharge employees "for good, bad, or no reasons, so long as its purpose is not to interfere with union activity." *Loy Food Stores*, 697 F.2d at 801. *See also NLRB v. Southern Florida Hotel and Motel Ass'n*, 751 F.2d 1571, 1579 n. 11 (11th Cir.1985); *Southwire Co. v. NLRB*, 820 F.2d 453, 459 (D.C.Cir.1987).

■ Where, as here, a discharge is alleged to be proscribed by the National Labor Relations Act, General Counsel for the NLRB bears the burden of showing that "antiunion animus contributed to the employer's decision...." *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 395, 103 S.Ct. 2469, 2471, 76 L.Ed.2d 667 (1983) (citing *Wright Line*, 251 N.L.R.B. 1083 (1980), *enf'd*, 662 F.2d 899 (1st Cir.1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982)); *NLRB v. O'Hare–Midway Limousine Service, Inc.*, 924 F.2d 692, 695–96 (7th Cir. 1991). The ALJ and, consequently, the Board have not shown General Counsel bore the prescribed burden.

We quote, at some length, from the Analysis-and-Conclusions section of the ALJ's decision as adopted by the Board. The following comprises all the ALJ's conclusions regarding antiunion motive and the supporting evidence:

The General Counsel takes the position that the justification offered for the disciplinary actions against Kaczmarek were pretextural and that the Respondent [Tribune] was actually motivated by antiunion considerations. I am satisfied

that the General Counsel's position should prevail.[2]

Turning first to Kaczmarek's union activity, there can be no doubt that Kaczmarek was an active union official and supporter and that Respondent was aware of his activities on behalf of the Union....

[N]oting particularly Respondent's failure to interview Kaczmarek [after the October 5 incident], I am convinced that Kaczmarek was suspended on October 12 for his activities on behalf of the Union and not for any misconduct because, in my view, there had been no "refusal to respond" [to an emergency or potential emergency situation[3]]....

Noting particularly the prior unlawful suspension of Kaczmarek on October 12, I conclude that the disciplinary action of November 10 and November 15 also constitute disparate treatment, undertaken because of Kaczmarek's activities on behalf of the Union.

.     .     .     .     .

In context with the other 8(a)(3) misconduct found herein, consisting of written warnings, suspensions, and finally discharge, I conclude that the January 26 written warning was a part of a continuing pattern of discrimination being conducted against Kaczmarek in a effort to provide a progression of disciplinary action in the hope of justifying Kaczmarek's discharge. While it may be that Kaczmarek reacted with some profanity to his disappointment at not being able to smoke in the break room [January 16], I cannot conclude that this misconduct was sufficiently serious to constitute, either standing alone or in context with other

incidents cited by Respondent, sufficient justification for his discharge.

In short, the evidence adduced at this hearing convinces me that Respondent, since the time of the October 4 election, was seeking out incidents, however trivial, upon which to build a record to support Kaczmarek's eventual discharge. Accordingly, I conclude that the reasons assigned by Respondent for the disciplinary action it took were pretextural and that the real reason was Kaczmarek's open, significant and long-term support for the Union.... I conclude that there was only one motive for the disciplinary action taken by Respondent and that was discriminatory, prompted by Kaczmarek's Union activity....

[In the alternative] I conclude that General Counsel has made out a *prima facie* case since Kaczmarek's protected union activity was a motivating factor in Respondent's decision to discharge him.

If the Tribune "was actually motivated by antiunion considerations" or if "Kaczmarek's protected union activity was a motivating factor," the ALJ has cited no substantial evidence, either direct or circumstantial, of that motivation.[4] First, it is true, as the ALJ stated, the Tribune knew Kaczmarek was a union activist and that he actively sought representation by the Union. But neither an employee's union activism nor an employer's knowledge of that activism constitutes sufficient evidence for a finding of antiunion animus.[5] Second, coincidence in time between union activity and discharge or discipline is one factor the Board may consider. *NLRB v. Industrial Erectors, Inc.,* 712 F.2d 1131, 1137 (7th Cir.1983). But mere coincidence

---

**2.** This paragraph of the decision reads as if it were a finding that General Counsel had carried the burden of persuasion after the Tribune presented its affirmative defense. As made clear in *Transportation Management* and our cases following *Wright Line,* that is not the first step in the process; it is a later one. The first step, a *prima facie* showing of antiunion animus by a preponderance of the evidence, was not taken.

**3.** The ALJ went on to conclude there had been no emergency situation, but the Board expressly stated it did not rely on that conclusion.

**4.** Likewise, a reading of the ALJ's section denominated "Facts" reveals no substantial evidence that would support a finding of antiunion motivation.

**5.** The Act goes even farther, declaring employers may openly express antiunion sentiment without committing an unfair labor practice provided there is "no threat of reprisal or force or promise of benefit." 29 U.S.C. § 158(c).

is not sufficient evidence of antiunion animus. Furthermore, the Tribune presented evidence that Kaczmarek's poor work record dated to well before the union election, indeed, to before the petition for that election. Third, having found the October 12th suspension was the result of Kaczmarek's union activities, the ALJ proceeded to construct a self-rising house of cards, garnering support for his subsequent findings that each succeeding disciplinary action was unlawful from his previous determinations that the preceding one or ones had been unlawful. While a pattern of activity may evidence antiunion animus, the pattern purportedly seen here is undocumented and illusory. Lastly, whatever circumstantial evidence there may be is certainly too remote, indeterminate and ethereal.

The Tribune raises a number of other issues. We address only three, and, given our holding above, we address those only cursorily.

■ First, the Tribune asks us to hold the Board did not meet its burden of proving its finding was supported by substantial evidence where the ALJ found certain testimony creditable and, accordingly, concluded Kaczmarek had stopped working to investigate the emergency situation on October 5, although there was no evidence at all that he had. The rule is clear. Credibility determinations by the ALJ, as the finder of fact, are given great weight. They are not given infinite weight, and where a factual conclusion is not supported by substantial evidence it will not be affirmed.

Next, the Tribune asks us to hold the NLRB misconstrued or, at least, misapplied the rule of law with regard to pretext and that the Board impermissibly used a dual-motive analysis to find pretext. The law of pretext and of dual motive are well stated in *Wright Line*, 251 N.L.R.B. 1083 (1980), *Peavey Co. v. NLRB*, 648 F.2d 460 (7th Cir.1981), and *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983). We refer the parties to those cases and others cited in this opinion.

■ Finally, the Tribune asks us to hold that the Tribune proved it would have dis-charged Kaczmarek for the reasons stated even if it did have another, unlawful motive. Clearly an employer, after General Counsel shows antiunion animus by a preponderance of the evidence, may argue the affirmative defense that it would have discharged the employee in any event. *Transportation Management*, 462 U.S. 393, 103 S.Ct. at 2470; *O'Hare–Midway*, 924 F.2d 692. Because it is an affirmative defense the employer "bears the burden of persuasion, but so far as the main case is concerned the burden of persuasion never shifts." *Sonicraft, Inc. v. NLRB*, 905 F.2d 146, 150 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 671, 112 L.Ed.2d 664 (1991). Without so holding, it appears the Tribune has borne its burden.

## CONCLUSION

Therefore, we deny enforcement, grant review, and vacate the order of the NLRB.

ROSZKOWSKI, Senior District Judge, dissenting:

I would affirm the decision of the National Labor Relations Board and, therefore, respectfully dissent from the decision of this court.

In an unlawful discrimination case such as this one, the general counsel of the National Labor Relations Board has the initial burden of showing that the protected activity was a substantial or motivating factor in the employer's decision to take adverse action against the employee. Once this burden is met, a violation of Section 8(a)(1) and (3) of the National Labor Relations Act (29 U.S.C. § 158(a)(1) and (3)) will be found unless the employer demonstrates, as an affirmative defense, that it would have taken the same action even in the absence of the protected conduct. These principles were set forth in *N.L.R.B. v. Wright Line, A Division of Wright Line, Inc.*, 662 F.2d 899, 904 (1st Cir.1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982), and approved in *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 400, 402–403, 103 S.Ct. 2469, 2473, 2474–75, 76 L.Ed.2d 667 (1983).

The *Wright Line* principles apply to all cases where the finding of a violation turns on employer motivation, including both "dual motive" cases and "pretext" cases. In a "dual motive" case, the adverse action is based partly on lawful and partly on unlawful grounds. The employer will prevail if, and only if, it shows that the lawful grounds alone would have led to the same action. In a "pretext" case, on the other hand, the asserted lawful grounds for the adverse action either did not exist or were not relied upon at all. The lawful grounds alone would not have led to the adverse action, and a formal finding to that effect is not required. *N.L.R.B. v. Industrial Erectors, Inc.*, 712 F.2d 1131, 1136 (7th Cir.1983).

In determining the factual issue of motivation, the Board may consider both direct and circumstantial evidence. *N.L.R.B. v. Industrial Erectors, Inc.*, 712 F.2d 1131, 1137 (7th Cir.1983). The Board's factual findings are conclusive if supported by substantial evidence on the record as a whole. The reviewing Court "may [not] displace the Board's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it *de novo.*" *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951). *See, also, N.L.R.B. v. Dorothy Shamrock Coal Co.,* 833 F.2d 1263, 1265 (7th Cir.1987).

Factors to be considered in determining the issue of motivation include, among others, evidence of hostility toward unionization combined with knowledge of the discharged employee's union activity; timing of the allegedly discriminatory action; and implausible or shifting explanations. *N.L.R.B. v. Industrial Erectors, Inc.*, 712 F.2d 1131, 1137 (7th Cir.1983). Evidence that other employees who engaged in the same or similar conduct did not receive similar discipline is also significant. *N.L.R.B. v. Town & Country LP Gas Service Co.*, 687 F.2d 187, 192 (7th Cir.1982); *Gossen Co. v. N.L.R.B.*, 719 F.2d 1354, 1360 (7th Cir.1983).

In this case, evidence of hostility toward unionization is clear as is Kaczmarek's union activity. In fact, no other employee matched his level of activity in support of the union's organizational campaign. The timing of the disciplinary actions against Kaczmarek, beginning immediately after the Union's election victory, is also significant as are the company's shifting explanations for his discharge. When the company initially disciplined Kaczmarek and then discharged him, it did not refer to any incidents occurring before the Board election. However, before the National Labor Relations Board and, subsequently, before the court it asserted additional reasons for the discharge.

I also find the stated reason given for discharging Kaczmarek less than convincing. The company asserts that "the company has a well-established rule which prohibits employees from directing profanity at their supervisors." The specific language alleged to have been used was "Why the fuck can't I smoke here?" and "You guys ought to get your shit together." It seems to me that such language is commonplace in an industrial setting such as the one here. Furthermore, there is a serious question as to whether the language was even directed at Kaczmarek's supervisor. The language certainly was not threatening, and seems to have been a comment on the situation, rather than any type of threat directed to the supervisor.

Based on a complete hearing of the case, the Board found that the disciplinary action the company took was discriminatorily motivated and, therefore, could not justify the discharge of Kaczmarek. These findings were based in part on credibility resolutions by the Administrative Law Judge, which the Board adopted. It is settled that "[c]redibility determinations ... are to be made by the ALJ and the Board, and will not be overturned by a reviewing court *absent extraordinary circumstances....* Moreover, explicit credibility findings are unnecessary when the ALJ implicitly resolves conflicts in testimony as evidence (sic) by findings of fact which are supported by the record as a whole." *N.L.R.B. v. Berger Transfer & Storage*

*Co.,* 678 F.2d 679, 687 (7th Cir.1982) (emphasis added) (citations omitted). The company has not shown extraordinary circumstances that would warrant overturning the credibility resolutions here.

This court has repeatedly held that the decision of the agency empowered to administer the Act is to be afforded great deference.[1] Taking all of these factors into consideration and being mindful of the standard of review in such cases, I would uphold the decision of the N.L.R.B.

---

1. In *N.L.R.B. v. Dorothy Shamrock Coal Co.,* 833 F.2d 1263, 1265 (7th Cir.1987), Judge Bauer recently set forth the standard of review as follows:

   Our task is to determine if the judgment of the NLRB if supported by substantial evidence on the record as [a] whole. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *see, e.g., Kankakee–Iroquois County Employers' Ass'n. v. N.L.R.B.,* 825 F.2d 1091, 1094 (7th Cir.1987); *N.L.R.B. v. American Printers and Lithographers,* 820 F.2d 878, 884 (7th Cir.1987). We must defer to the expertise of the Board and will not displace its reasonable inferences even where a plenary review of the record might yield a different result. *NLRB v. United Insurance Co.,* 390 U.S. 254, 260, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968); *NLRB v. Walton Mfg. Co.,* 369 U.S. 404, 405, 82 S.Ct. 853, 854, 7 L.Ed.2d 829 (1962). Moreover, we "must accept the Board's credibility findings unless the party challenging [those determinations] establishes [that] 'exceptional circumstances'" justify a different result. *NLRB v. Del Rey Tortilleria, Inc.,* 787 F.2d 1118 (7th Cir.1986) (quoting *NLRB v. Harrison Steel Castings Co.,* 728 F.2d 831, 836 n. 9 (7th Cir.1984)); *NLRB v. Berger Transfer & Storage Co.,* 678 F.2d 679, 687 (7th Cir.1982).