KANNE, Circuit Judge.
 

 Dilling Mechanical Contractors, Inc. (“Dill-ing”) petitions this court for a review of the National Labor Relations Board’s (“the Board”) finding that Dilling violated 29 U.S.C. § 158(a)(1) and (a)(3). The Board determined that Dilling committed § 8(a)(1) and (a)(3) violations by failing to reinstate unfair labor practice strikers after they had made an unconditional offer to return to work. Dilling appeals the Board’s order. In turn, the Board cross-petitions for enforcement of its order. We deny Dining’s appeal and enforce the Board’s order.
 

 
 *-1061
 
 I. History
 

 DiUing is an industrial contractor that employs about 100 people and has its main office in Logansport, Indiana. The bulk of Dilling’s business is divided between electrical contract work and mechanical work— which includes all of Dilling’s other construction trades.
 

 Beginning in 1992, the International Brotherhood of Electrical Workers Union (“IBEW”) was successful in organizing many of Dilling’s electrical contract workers. In the later part of 1992, Dilling performed work on the Essex Wire facility, located in Franklin, Indiana, more than 50 miles from Dilling’s main office in Logansport. After the work at Essex Wire began, Dilling transferred virtually all IBEW supporters to that job site. Dilling then employed Roger Seely, an ex-Navy Seal with no electrical work experience, to serve as the Essex Wire job site “expeditor.” As the expeditor, Seely’s duties included the enforcement of company rules and insuring that the workers performed their duties in a manner that was satisfactory to Dilling’s management. In short, the record readily demonstrates that Dilling brought in Seely to intimidate and berate employees who supported the IBEW.
 

 In response to Dilling’s heavy-handed tactics, on April 12, 1993, five of Dilling’s employees, all of whom were members of the IBEW, ceased work in a concerted effort at the Essex Wire job site and engaged in an unfair labor practice strike. Those employees were: Robert Guinn, Gene Kaufman, Donna Serna, Michael Boatman, Sr. and Michael Boatman, Jr. After approximately one week of picketing, however, the strikers collectively decided to return to work. On April 20, 1993, three of the strikers-Guinn, Serna and Kaufman — went to speak with Dilling’s supervisor at the Essex Wire job site to inquire about returning to work. When Guinn asked if all the strikers could return to work, the job site supervisor, Glenn Click, told Guinn and the others that they would have to speak with company president, Dick Dilling, because as far as the company was concerned, the strikers were “considered to have quit.” Following Click’s response, the strikers resumed picketing outside the Essex Wire job site. Additionally, the strikers began picketing at Dilling’s headquarters in Logansport.
 

 On the same day that Guinn spoke with supervisor Click, the union, on behalf of the strikers, faxed a letter to Dick Dilling at the company’s headquarters making an unconditional offer to return to work. Dilling did not respond. Although Dilling’s management was aware that the strikers were picketing outside their headquarters, nothing was said to the strikers about returning to work.
 

 Three months later, on July 27, 1993, the strikers, through the IBEW, sent a second letter to Dilling, reaffirming their unconditional offer to return to work. Dilling did respond to this letter on August 4, 1993, indicating that the company had no record of the strikers’ previous unconditional offer to return to work. Furthermore, DiUing’s response stated that the strikers had been given, but subsequently refused, an opportunity to return to work for Dilling.
 

 The workers sent yet another letter to Dilling on April 20, 1994, asking again for reinstatement to their old jobs. Dilling did not respond and the IBEW eventually filed unfair labor practice charges against Dilling for failing to reinstate the strikers. After extensive hearings, the ALJ determined that Dining’s refusal to reinstate the strikers violated § 8(a)(1)
 
 [1]
 
 and (a)(3)
 
 [2]
 
 of the National Labor Relations Act. In turn, the Board adopted the AL J’s recommended order.
 

 II. STANDARD OF REVIEW
 

 We will uphold the Board’s order if “substantial evidence on the record as a
 
 *-1060
 
 whole supports its factual findings and if its conclusions have a reasonable basis in the law.”
 
 Carry Cos. of Illinois v. NLRB,
 
 30 F.3d 922, 926 (7th Cir.1994) (citing
 
 Chicago Tribune Co. v. NLRB,
 
 962 F.2d 712, 716 (7th Cir.1992));
 
 see also
 
 29 U.S.C. § 160(e), (f). Substantial evidence is “such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.”
 
 Universal Camera Corp. v. NLRB,
 
 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting
 
 Consolidated Edison Co. v. NLRB,
 
 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). While it is not our job to engage in fact finding or to replace the Board’s reasonable conclusions, a mere cursory review of the record is insufficient. Instead, we must take into account the entire record — which would include any evidence contrary to the Board’s view.
 
 See Chicago Tribune,
 
 962 F.2d at 716. Nonetheless, “an ALJ’s credibility determinations are entitled to considerable deference and will be overturned by a reviewing court only when extraordinary circumstances so require.”
 
 Carry Cos.,
 
 30 F.3d at 926;
 
 accord NLRB v. Advance Transportation Co.,
 
 979 F.2d 569, 573 (7th Cir.1992).
 

 III. Analysis
 

 We begin with the well-settled principle that “unfair labor practice strikers are entitled to reinstatement upon making an unconditional offer to return to work.”
 
 Lapham-Hickey Steel Corp. v. NLRB,
 
 904 F.2d 1180, 1188 (7th Cir.1990);
 
 accord Richmond Recording Corp. v. NLRB,
 
 836 F.2d 289, 292 (7th Cir.1987). Accordingly, an employer violates § 8(a)(1) and (a)(3) of the Act when he fails to offer immediate reinstatement to unfair labor practice strikers who have made an unconditional offer to return to work.
 
 Richmond Recording Corp.,
 
 836 F.2d at 293-94.
 

 Dilling vigorously disputes the Board’s determination that it committed § 8(a)(1) and (a)(3) violations by failing to reinstate the strikers after they had offered to return to work unconditionally. Dining’s argument is premised upon two assertions: a) the strikers did not make an unconditional offer to return to work; and b) the company president, Dick Dilling, attempted to reinstate the strikers but they refused.
 

 A The Unconditional Offer to Return to Work
 

 Dilling contends that there was no substantial evidence for the Board to determine that the strikers made an unconditional offer to return to work. In fact, it is Dining’s position that no such offer was made by the strikers and thus, Dilling had no duty to reinstate them. In this regard, however, we have held that the employer bears the burden to demonstrate that the offer to return to work was not unconditional.
 
 See NLRB v. Augusta Bakery Corp.,
 
 957 F.2d 1467, 1472 (7th Cir.1992). Furthermore, “[t]he Board’s finding of an unconditional offer is a predominantly factual determination, which we must uphold if supported by substantial evidence.”
 
 Id.
 

 Notwithstanding Dilling’s assertion, our review of the record reveals that the strikers did indeed make an unconditional offer to return to work. At approximately 7:00 a.m. on April 20, 1993, Bob Guinn, accompanied by Gene Kaufman and Donna Serna, drove to the Essex Wire job site. Guinn recounted that upon their arrival he told the supervisor, Glen Click, that “we was ready to come back to work if [Click] would take us back.” Guinn’s recollection is substantiated by the testimony of strikers Kaufman and Serna— both of whom were present diming the conversation.
 

 Instead of reinstating the strikers, however, supervisor Click told Guinn and his fellow strikers that they “had been replaced” and that the company had “considered the strikers to have quit.” Following Click’s comments, the record indicates that Guinn and the other strikers resumed picketing. Shortly after Guinn and his fellow strikers resumed their picketing, the IBEW faxed Dill-ing the following letter:
 

 This letter is to notify you that as of 7:00 A.M., 20 April 1993 the Organizing Committee has unconditionally called off their Unfair Labor Practice Strike against Dill-ing Mech./Elec. Contractors and returned to work. They have reported to the Essex
 
 *-1059
 
 Wire job site of which they were last assigned and are ready to go back to work.
 

 If you have any questions, please contact Ed Butler with I.B.E.W. Local 668 at 317-474-1021.
 

 Additionally, the record discloses that over the course of the next year, the IBEW made at least two more attempts to notify Dilling that its members would return to work unconditionally. Letters were sent to Dilling on July 27, 1993
 
 [3]
 
 and on April 20, 1994
 
 [4]
 
 specifically reaffirming the strikers’ original offer.
 

 Based on the foregoing, there is substantial evidence to support the Board’s conclusion that Guinn’s statement to supervisor Click at the Essex Wire job site — that they were “ready to come back to work” — was sufficient to notify Dilling that the strikers were making an unconditional offer to return to work. Substantial evidence also exists to support the Board’s finding that the April 20, 1993 fax sent to Dilling served as further notice that the strikers sought to return to work unconditionally.
 
 See generally Lapham-Hickey Steel Corp.,
 
 904 F.2d at 1180.
 

 Not only did the Board have before it Guinn’s oral offer on behalf of the strikers to return to work unconditionally, but it also had the April 20 letter, as well as the two subsequent letters sent by the IBEW on behalf of the strikers. These facts are certainly adequate to support the Board’s conclusion that the strikers notified Dilling of their unconditional offer to return to work.
 

 Finally, Dilling contends that there was no actual unconditional offer to return to work because the strikers resumed picketing immediately following Guinn’s conversation with Click on April 20, 1993. Dilling’s position is simply without merit. The resumption or the continuance of a union’s picket line is not inconsistent with the union’s unconditional offer to return to work.
 
 Harris-Teeter Super Markets, Inc.,
 
 242 NLRB 132, 101 LRRM (BNA) 1130,
 
 available in
 
 1979 WL 9061, at *40 (1979),
 
 enforced, sub nom. NLRB v. Harris-Teeter Super Markets, Inc.,
 
 644 F.2d 39 (D.C.Cir.1981).
 

 B. The Employer’s Offer for Reinstatement
 

 Dilling presents the additional argument that it made a valid offer to reinstate the strikers, even though it claims that the strikers failed to make an unconditional offer to return to work. Dilling supports its assertion on the following premise: on April 20, 1993, while at the Essex Wire job site, supervisor Click told Guinn that the striking employees were considered to have quit then-jobs and that they should “set up an appointment with Dick Dilling if they wanted then-jobs back”; and Dilling offered the testimony of president Dick Dilling — stating that he made himself available for striker reinstatement appointments beginning April 20, 1993 and that no striker called him asking for reinstatement. Therefore, Dilling asserts that the strikers’ unwillingness to contact Dick Dilling amounted to a “refus[al] to avail themselves of the opportunity” of reinstatement.
 

 The Board had before it the following evidence on the issue of an offer of reinstatement. First, supervisor Click’s statement to Guinn was, at best, ambiguous. Telling the strikers that they had quit and had been replaced was merely a rebuff of the strikers’ return to work offer. Second, Dill-ing gave no meaningful response to the IBEW’s letters of April 20, 1993, July 27,
 
 *-1058
 
 1993, and April 20, 1994 — all of which requested that Dilling contact the union regarding reinstatement of the strikers. In its single reply (made to the IBEW’s July 27, 1993 letter), Dilling sidestepped the strikers’ unmistakably clear offer to return to work unconditionally. The union’s letters, written on behalf of the strikers, were of no avail. It is obvious, as the Board found, that Dilling’s response to the union was spurious. Third, neither Dilling’s president nor anyone on behalf of the company made any attempt to contact the strikers about reinstatement, despite the fact that Dilling’s management was aware that the strikers were picketing outside Dilling’s headquarters.
 

 Accordingly, it is abundantly clear from the record that substantial evidence demonstrates that the Board correctly concluded that Dilling did not make an offer of reinstatement.
 

 IV. Conclusion
 

 For the reasons stated above, we Deny Dilling’s petition and ENFORCE the Board’s order.
 

 [1]
 

 . Section 8(a)(1) prohibits an employer from interfering with the rights guaranteed hi § 7 of the Act 29 U.S.C. § 158(a)(1).
 

 Section 7 provides, in part, that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations ... [and] to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.” 29 U.S.C. § 157.
 

 [2]
 

 . Section 8(a)(3) forbids an employer from “discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization.” 29 U.S.C. § 158(a)(3).
 

 [3]
 

 . The strikers' July 27, 1993 letter, in part, reads as follows:
 

 ... We wish to remind you that the following employees of Dilling Mechanical/Electrical did issue you an unconditional return to work, following their strike and still wish to return to woHk for your company....
 

 [4]
 

 . The strikers’ August 20, 1994 letter reads as follows:
 

 This letter is to restate and to remind you that on April 20, 1993 and several occasions since then, the organizing committee of IBEW Local 668 made an unconditional offer to return to work on behalf of the Unfair Labor Practice Strikers.
 

 As we have stated before, the ULP Strikers are willing to discontinue their strike and return to work. If you do not have a means to contact any of the strikers, you can get in touch with them by calling Ed Butler at 317-474-1021, Monday thru Friday from 8:00 a.m. until 5:00 p.m.
 

 If you have any questions regarding this matter, please do not hesitate to contact Ed Butler.