In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-2226, 00-2191

Great Lakes Warehouse Corporation,

Petitioner/Cross-Respondent,

v.

National Labor Relations Board,

Respondent/Cross-Petitioner.

On Petition for Review and Cross-Application
for Enforcement of the Order of the
National Labor Relations Board.
No. 13-CA-36553.

Argued January 16, 2001--Decided February 7, 2001

Before Flaum, Chief Judge, and Posner and Coffey,
Circuit Judges.

Flaum, Chief Judge.  Great Lakes Warehouse
Corporation ("GLW") appeals from the National
Labor Relations Board's ("NLRB" or "Board") order
finding that it violated the National Labor
Relations Act ("NLRA") by firing one employee and
attempting to promote another soon before a union
organizing drive. GLW claims that its mere offer
of a promotion cannot violate the NLRA and that
it fired the other employee in accordance with
its disciplinary policy. For the reasons stated
herein, we reject GLW's arguments and grant
enforcement of the NLRB's order.

I.  Background

    GLW is a warehousing company in Northern
Indiana owned by the Faure Brothers Corporation
("Faure"). In October, 1997, an affiliate of the
International Brotherhood of Teamsters, AFL-CIO
was preparing an organizing drive at GLW. GLW
employees Gary Anderson and Victor Oller were
known union supporters who had been active in
prior attempts to unionize GLW.

    On October 16, the warehouse distribution
manager offered Anderson the position of foreman,
which had been open for approximately four
months. Anderson declined, and the manager asked

him if he was refusing the job "because of the union?" Anderson replied that he could not comment. The manager responded that Anderson should "be prepared for changes" and walked away. On October 20, as Anderson was leaving the building, he met three management officials, including the owner of Faure. The owner asked him why he had refused the foreman job, and Anderson said that he "couldn't talk about it." The owner then asked why he and other employees could not talk to her about their concerns, rather than seeking union representation and incurring the attendant dues. Anderson was unresponsive and the conversation turned to golf and other matters. No negative changes in Anderson's pay or working conditions took place after he refused the offer, and he voluntarily resigned in March, 1998.

Oller, a forklift driver, was fired by the company after receiving repeated written warnings for errors. The company had a progressive disciplinary policy, known to Oller, with the fourth warning requiring the employee's termination. On October 21, the warehouse distribution manager issued Oller his first warning for an incident on October 1 when a truck loaded by Oller left without a pallet of ordered product. Oller received his second warning and a one-day suspension without pay around October 28 for unloading more cases of product than necessary on October 21. The third warning was issued on October 30 when he mislabelled four hundred cases of product on October 20; Oller was given a three-day suspension without pay by the manager. The fourth and final warning was presented to Oller on November 7 for putting the incorrect expiration date on cases of cheese on October 27. Management presented Oller with the option of voluntarily resigning and being given a severance package in return for signing a settlement offer and release prepared by the company. Oller was given a week off to consider this offer, but he rejected it on November 14 and was immediately fired.

GLW had been more lenient in the application of its disciplinary policy with other employees by giving only a single warning for multiple mistakes. Barbara Pala received a second warning for errors occurring on three different days, which was followed by a third warning which also covered three different days worth of errors. When Pala was eventually forced to resign, her final written warning stated that she had been averaging two mistakes a week. Another employee, Sharon Cole, was given an initial warning for mistakes occurring on two days. Jim Campbell also was given an initial warning for mistakes made on a particular day "and prior." The warning noted that he had made numerous errors and a customer

had complained about his performance, yet Campbell received only a single warning.

Relying on these facts, the General Counsel of the NLRB charged GLW with various violations of the NLRA. An administrative law judge ("ALJ") found that GLW violated sec. 8(a)(1) of the NLRA, 29 U.S.C. sec. 158(a)(1), in three ways, namely by: threatening Anderson with unspecified retaliation, coercively interrogating Anderson regarding his union sympathies, and offering a promotion to induce him to abandon the union. A fourth transgression was of sec. 8(a)(3), 29 U.S.C. sec. 158(a)(3), which the ALJ found GLW violated by firing Oller for supporting the union. The Board affirmed the ALJ's findings regarding these four violations, emphasizing that the promotion was offered to Anderson immediately before the organizing campaign and the fact that this foreman position had been vacant for four months. GLW petitions for review of two of the Board's findings that GLW violated the NLRA in offering to promote Anderson and by firing Oller.

## II.  Discussion

We will affirm the Board's decision if its factual findings are supported by substantial evidence and its conclusions have a reasonable basis in the law. See Dilling Mech. Contractors, Inc. v. NLRB, 107 F.3d 521, 523-24 (7th Cir. 1997). This standard requires only that the Board produce relevant evidence sufficient for a reasonable person to accept the Board's conclusion. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951). However, a cursory review is insufficient, and we take into account the whole record, including evidence contrary to the Board's position. See Dilling, 107 F.3d at 524.

### A.  Uncontested Violations

GLW has not contested the Board's findings that it violated sec. 8(a)(1) of the NLRA by interrogating Anderson and by making unspecified threats of retaliation when he declined the promotion to foreman. Therefore, we summarily enforce the Board's order regarding these issues without determining whether substantial evidence supports the Board's findings. See NLRB v. Champion Labs., Inc., 99 F.3d 223, 227 (7th Cir. 1996). These violations do not disappear from the case, but rather remain as evidence that may support the Board's findings on contested issues. See U.S. Marine Corp. v. NLRB, 944 F.2d 1305, 1314-15 (7th Cir. 1991) (en banc).

### B.  Promotion Offer

Section 8(a)(1) of the NLRA prohibits employers

from interfering with, restraining or coercing employees in the exercise of their rights to form, join, or assist labor organizations and engage in activities for the purpose of collective bargaining or other mutual aid or protection. 29 U.S.C. sec. 158(a)(1). Offers of promotion to management positions can violate sec. 8(a)(1) if these reasonably tend to interfere with or coerce employees in exercising the right of self-organization granted by sec. 7 of the NLRA, 29 U.S.C. sec. 157. See NLRB v. Henry Colder Co., 416 F.2d 750, 753 (7th Cir. 1969); see also Matson Terminals, Inc. v. NLRB, 114 F.3d 300, 302 (D.C. Cir. 1997); see generally Medo Photo Supply Corp. v. NLRB, 321 U.S. 678, 685-86 (1944) (holding that offers of benefits to union supporters that induce them to leave the union violate sec. 8(a)(1)). We determine whether coercion or interference was present by examining all the relevant facts and circumstances. See NLRB v. Shelby Mem'l Hosp. Ass'n, 1 F.3d 550, 559 (7th Cir. 1993).

Substantial evidence supports the Board's position. GLW argues that Anderson was qualified for the position, and that no specific threats or promises were made to him. GLW also repeatedly stresses that no change in Anderson's working conditions took place after he declined the promotion, and thus its offer cannot be considered coercive. However, the test is not whether interference or coercion actually occurred, but only whether the employer's action reasonably tended to interfere with or coerce employees in the exercise of their self-organization rights. See Carry Cos. of Ill. v. NLRB, 30 F.3d 922, 934 (7th Cir. 1994). The evidence presented to the Board was rather sparse, but it was sufficient under the deferential substantial evidence standard to support the Board's conclusion that the offer was an attempt to interfere with Anderson's right to unionize by moving him to a management position. The most important facts are the Board's uncontested findings that after Anderson declined the promotion the warehouse distribution manager interrogated him and then threatened him with unspecified reprisals. In addition, other evidence buttressed the Board's position. Anderson was unwilling to talk about any union-related reasons as to why he turned down the offer, which suggests that he felt coerced. See Champion Labs., 99 F.3d at 227. The timing of the offer also supports the Board's determination. The foreman position had been open for four months, yet GLW waited until soon before the organizing drive, in which Anderson would be a key union supporter, to offer the promotion to Anderson. While timing alone is not sufficient to show coercion or interference, it is a relevant

factor for the Board to consider and may strengthen the Board's conclusion if other indicia of coercion or interference are present. See Chicago Tribune Co. v. NLRB, 962 F.2d 712, 717-18 (7th Cir. 1992).

C. Termination

Section 8(a)(3) prevents an employer from discriminating in the tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. 29 U.S.C. sec. 158(a)(3). An employer violates this section if anti-union animus was a substantial or motivating factor in the company's decision to discharge an employee. See Vulcan Basement Waterproofing of Ill. v. NLRB, 219 F.3d 677, 684 (7th Cir. 2000). To establish that a termination violates this section, the General Counsel of the NLRB must show by a preponderance of the evidence that: (1) the employee engaged in activities protected by the NLRA; (2) the employer knew of the employee's involvement in these activities; (3) the employer harbored animus toward those activities; and (4) a causal connection exists between the employer's animus and the decision to terminate. See id; Carry Cos., 30 F.3d at 927. If the General Counsel succeeds, then the employer can still avoid the finding of a violation if it demonstrates by a preponderance of the evidence that its discharge decision was based on unprotected conduct and that it would have fired the employee regardless of his or her protected activities. See Carry Cos., 30 F.3d at 927.

The Board's finding of a violation is supported by substantial evidence. GLW argues that the Board has not shown anti-union animus because GLW knew for over a decade that Oller was a union supporter and would have fired him long ago if it had wanted to punish him for his union activities. GLW also contends that permitting Oller to resign and extending a severance package shows that it lacked animus. GLW further claims, both to attack the causal connection and to establish its affirmative defense, that its disciplinary policy was mandatory and Oller admitted committing all four of the violations which led to his dismissal. However, as with the promotion violation, though the evidence is far from overwhelming, the record contains enough support for the Board's conclusion. Anti-union animus could be demonstrated by the contemporaneous uncontested interrogation and threats of reprisal against Anderson regarding his union activism. In establishing the causal connection and defeating GLW's affirmative defense, the General Counsel in addition relied on the fact that other employees, who were not

ardent union supporters, were not treated as harshly under GLW's disciplinary policy. Though GLW claims that the text of its policy requires a separate warning for every error, the General Counsel produced evidence, described above, that other employees less identified with the union were given warnings that covered multiple mistakes made on different days./1 However, Oller was given a warning for each error rather than having errors on different days combined into a single warning as occurred with Pala, Cole, and Campbell. Disparate disciplinary treatment of union supporters supports a finding that GLW violated sec. 8(a)(3) by firing Oller. See NLRB v. Del Rey Tortilleria, Inc., 787 F.2d 1118, 1124 (7th Cir. 1986); NLRB v. Bliss & Laughlin Steel Co., 754 F.2d 229, 236 (7th Cir. 1985). Finally, the timing of his discharge, though it cannot alone be the basis for a violation, see Vulcan, 219 F.3d at 688, further supports the Board's finding. See Jet Star, Inc. v. NLRB, 209 F.3d 671, 676-77 (7th Cir. 2000). While GLW might have known of Oller's union sympathies for years, it fired him soon before an organizing drive. Sufficient evidence was presented for the Board to conclude that GLW terminated Oller in order to remove someone who likely would be a leader in this attempt at unionization.

III.  Conclusion

The Board is entitled to summary enforcement of the two uncontested NLRA violations. Substantial, though relatively modest, evidence supports the Board's other two findings which we will not disturb given the deferential standard of review. Therefore, we Deny GLW's petition for review and Enforce the Board's order in full.

/1 At oral argument, GLW claimed that it had produced evidence before the ALJ that the disciplinary policy was normally strictly enforced and that the more lenient treatments some employees received were rare and unusual deviations not related to their support of a union or lack thereof. Because this argument was not presented in GLW's briefs, it is waived. See Berens v. Ludwig, 160 F.3d 1144, 1148 (7th Cir. 1998).

Posner, Circuit Judge, concurring.  I join the court's opinion, and write separately only to

flag two issues for possible future consideration either by the Labor Board or, in an appropriate case, which this is not, a reviewing court.

The Board relies, with regard to Anderson, the employee to whom the company offered a promotion to management rank, on the conventional principle that offering a promotion is one method of interfering with a union organizing campaign, and with regard to Oller, the employee fired for shipping the wrong items, on the equally conventional principle that failure to impose discipline uniformly can be evidence of discrimination against a union supporter. Both principles have a role to play in unfair labor practices cases, but it is a role to be played with caution, as neither the Board nor (fatally) the company recognizes.

The idea that the carrot is as potent as the stick, and therefore that it is as "coercive" to offer a union supporter a promotion to management as it is to fire him, is unsound. Most workers welcome a promotion, and so a company that has a practice of promoting union supporters to get them out of the bargaining unit, the group of workers that vote on whether to unionize the unit, will actually increase the expected income of being a union supporter. The more eager the company is to buy off union supporters, the more union supporters there will be. So likely, therefore, is such a tactic of discouraging unionization to backfire that the Board should hesitate to infer such a motive from the offer of promotion.

Oller received the stick, not the carrot; but the use of evidence of nonuniformity in the imposition of discipline to support an inference to discrimination has a downside that, again, neither the Board nor the company in this case recognizes. If a company risks legal trouble by exercising lenience in the enforcement of its work rules, it will have an incentive to enforce those rules in a uniform and therefore harsh manner. Lenience will be out. Workers as a whole may suffer. It does not follow that evidence of discriminatory enforcement should be inadmissible, because having strict rules on attendance or performance but enforcing them only against union supporters would be a potent method of discouraging unionization. But the downside to this type of evidence that I have pointed to is an argument for the Board's resolving close cases against an inference of discrimination. Oller's was a close case, given the number and gravity of his mistakes, but the company has failed to argue that close cases should be resolved in favor of the company for the sake of other workers, workers who might receive lenient treatment were it for the company's fear that lenience toward a

worker who happened not to be a union supporter
would be used as evidence of an unfair labor
practice.