**Phillip GEORGE, Plaintiff–Appellant,**

v.

**RYDER TRUCK RENTAL, a foreign corporation licensed to do business in Illinois, and Ryder Systems, Inc., a foreign corporation, Defendants–Appellees.**

**No. 00–3176.**

United States Court of Appeals, Seventh Circuit.

Argued March 27, 2001.

Decided July 25, 2001.

Before Hon. POSNER, Hon. MANION, and Hon. WILLIAMS, Circuit Judges.

## ORDER

Phillip George sued Ryder Truck Rental, Inc. and Ryder Systems, Inc. (collectively "Ryder"), seeking damages for injuries he sustained on a truck Ryder leased to his employer, Metal Sales Manufacturing Corp. ("Metal Sales"). The district court granted summary judgment to Ryder, and George appeals. We affirm.

## I.

Phillip George was a truck driver for Metal Sales. On August 20, 1997 George was preparing a truck loaded with materials for delivery. Metal Sales had leased the truck from Ryder. According to George, after he completed restrapping bungee cords that secured a tarp covering the trailer, he noticed a section of tarp which needed another bungee cord. George climbed onto the deck plate at the back of the truck's cab in order to attach another cord, but as he turned toward the rear of the truck the deck plate slipped, causing him to fall. The fall caused substantial injury to George's leg, which required surgery.

On August 9, 1999, George sued Ryder in federal district court, claiming he was injured as a result of Ryder's negligence in maintaining the catwalk, walkway, crane, or boom of the truck. Ryder moved for summary judgment, arguing that George was injured within the scope of his employment with Metal Sales, and that the injury occurred on a section of the truck which Metal Sales was responsible for maintaining, thus precluding liability under Metal Sales' lease agreement. In support of its motion for summary judgment, Ryder presented the Truck Lease and Service Agreement (the "Agreement") which it had entered into with Metal Sales. The "Maintenance and Repairs" section of the Agreement required Ryder to perform "[m]aintenance and repairs including all labor and parts which may be required to keep the Vehicles in good operating condition." The "Equipment Covered and Term" section of the Agreement provided that "[w]here a Vehicle is operated by Customer with a trailer or other equipment not included in Schedules [sic] A, or not maintained by Ryder under a separate agreement, Customer warrants that such trailer and/or equipment will be in good operating condition."

Ryder also submitted an affidavit from Dick Tejano, the Service Manager for the Ryder facility in Davenport. Tejano stated that the deck plate which caused George's fall was not the factory-installed deck plate which was issued with the truck; rather, Metal Sales had removed the Ryder deck plate and replaced it during the installation of a crane onto the rear of the truck. Ryder further submitted the affidavit of Terry Hozak, an employee of Metal Sales who oversaw the maintenance of all Metal Sales trucks leased by Ryder from 1989 to 1998. He stated that Metal Sales had replaced the deck plate and was solely responsible for servicing all catwalks, walkways, and boom areas attached to the back of the cab portion of the truck, the areas which George claimed in his complaint were negligently maintained.

George disputed both affidavits, and stated in his own affidavit that the deck plate had not been replaced. The district court held that George presented no admissible evidence to support this claim. The district court then granted Ryder's motion for summary judgment, concluding that the Agreement precluded liability because Ryder had no duty to service or maintain the portion of the truck from which George fell. George appeals, claiming that a genuine issue of material fact exists as to whether the deck plate from which he fell was installed by Ryder or replaced by Metal Sales. He also appears to argue that even if Metal Sales had replaced the deck plate, the district court erred in holding that Ryder could not be liable under the Agreement. We now turn to the merits of this appeal.

## II.

We review de novo the district court's decision to grant summary judgment, drawing all reasonable inferences from the record in the light most favorable to the nonmoving party. *See Del Raso v. United States,* 244 F.3d 567, 570 (7th Cir.2001). Summary judgment is appropriate "when, after, an adequate time for discovery, the non-moving party fails to establish the existence of a genuine issue of material fact for trial, Fed.R.Civ.P. 56(c), or make a showing sufficient to prove an element essential to his case on which he will bear the burden of proof at trial." *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The evidence, however, must create more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A mere "scintilla" of evidence in support of the nonmovant's position is insufficient; the nonmovant must present definite, competent evidence to rebut the motion. *See*

*Albiero v. City of Kankakee,* 246 F.3d 927, 932 (7th Cir.2001).

The district court applied Illinois law and both parties to this action assume Illinois law applies. We will do likewise. *See Coleman v. Ramada Hotel Operating Co.,* 933 F.2d 470, 473 (7th Cir.1991). In order to state a cause of action for negligence under Illinois law, the plaintiff must show that: "(1) the defendant owed him a duty of care; (2) the defendant breached that duty; and (3) the breach was the proximate cause of his injuries." *Staples v. Krack Corp.,* 186 F.3d 977, 979 (7th Cir.1999) (citing *Ward v. Kmart Corp.,* 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223, 226 (Ill.1990)). Where, as here, the negligence action is based on a contractual obligation, the scope of the duty is determined by the contract terms. *See Melchers v. Total Electric Constr.,* 311 Ill.App.3d 224, 243 Ill.Dec. 512, 723 N.E.2d 815, 818 (Ill. App.Ct.1999). We review questions of contract interpretation de novo. *See In re Holstein Mack & Klein,* 232 F.3d 611, 614 (7th Cir.2000).

The question presented in this case is whether Ryder had a contractual obligation to maintain the deck plate which caused George's injury. The "Equipment Covered" section of the contract provides that the customer warrants that "a trailer or other equipment" not covered under Schedule A will be in good operating condition. In other words, the customer, not Ryder, has the duty to maintain the equipment on or attached to the truck if it does not fall under Schedule A.

The next question is what equipment is covered under Schedule A. Schedule A is a list of trucks leased by Ryder to Metal Sales, including the vehicle number, year of manufacture, and make. Thus, coverage under the "Equipment Covered" section depends upon whether the deck plate was removed and replaced by Metal Sales.

If the deck plate was replaced by Metal Sales, it is simply not part of the truck provided by Ryder under Schedule A.

George argues that the crane (the installation of which allegedly required the deck plate to be replaced) was installed by Ryder, not Metal Sales. George claims that a 1996 document from another company, Rexco, indicates that Metal Sales' maintenance was limited to repairs to the crane. The Rexco document contained a handwritten note, stating "[a]ccording to Rexco files we did not modify or replace any decking on or around the fuel tank." George claims that this is the only Metal Sales document to indicate that work was performed on the truck. But he does not challenge the district court's decision that this document, unsupported by an affidavit, was inadmissible.[1]

As the district court noted, the uncontroverted evidence in this case established that Metal Sales replaced the deck plate. Both Tejano and Hozak offered affidavits to this effect, and George did not provide any admissible evidence to place these affidavits in dispute. Hozak, whose employment in a supervisory capacity spanned the lease of the truck through George's injury, was in a position at Metal Sales which allowed him to speak from personal knowledge whether the deck plate had been replaced. George, in contrast, merely claims in his affidavit that he had access to Metal Sales files years after the alleged replacement occurred, and that in his opinion there are no documents to support Hozak's testimony. George's self-serving statement does not suffice to create a genuine dispute of material fact on this issue. Based on the undisputed evidence, because the deck plate was replaced, it was not covered in Schedule A. And because it was not covered in Schedule A, the customer, Metal Sales, warranted its maintenance. Therefore, Ryder was not contractually responsible for the maintenance of the deck plate, and Ryder accordingly had no duty to George.

George argues in response that the contract is ambiguous on the question of liability when read in its entirety. He claims the deck plate could fall under Part B of the "Maintenance and Repairs" section of the contract, a section which prohibits Metal Sales from making any repairs to "Vehicles, governors and other accessories" without Ryder's permission. He seemingly argues that Metal Sales would have violated the contract if it had replaced the deck plate. But whether or not Metal Sales violated the contract by replacing the deck plate in no way addresses the issue of Ryder's duty. George does not explain how this section might modify the warranty in the "Equipment Covered" clause, or most importantly, how this section would place liability with Ryder. Ac-

---

1. George also relies on his deposition testimony, which describes a defense exhibit (not attached to the deposition transcript) that allegedly "indicates that Ryder billed Metal Sales for the original installation of the crane." This document is a Ryder document, dated August 21, 1992, which states: "Additional Items to be billed to Metal Sales upon completion of boom transfer ... $2500.00 has been rated for boom mounting and full tire fenders." At the top of the document is an unsigned handwritten notation: "Unit # 477412," the number of George's truck. George's brief does not explain why his inter-pretation of this Ryder document deserves any weight, nor how this deposition testimony shows that the district court erred in its determination that he provided no admissible evidence. Accordingly, George has waived any argument that the document described in his deposition, or his testimony regarding the document, is admissible evidence. *See John v. Barron,* 897 F.2d 1387, 1393 ("This court is not obligated to research and construct legal arguments open to parties, especially when they are represented by counsel as in this case.").

cordingly, George's claim of contractual ambiguity cannot succeed.

Alternatively, George argues that the district court improperly relied on parol evidence when it held that Metal Sales was responsible for the deck plate that caused his injury. Citing *National Distillers v. First National Bank*, 804 F.2d 978 (7th Cir.1986), George claims it is inappropriate to grant summary judgment based on an ambiguous contract that requires a court to resort to conflicting parol evidence, and that the court's judgment must therefore be reversed. He contends that he fell from a portion of the truck which was not a "trailer or other equipment," and apparently believes the Tejano and Hozak affidavits were used as parol evidence to interpret the "trailer or other equipment" language.

However, these affidavits are not parol evidence. The affidavits of Tejano and Hozak address the factual question whether the deck plate at issue was installed by Ryder or replaced by Metal Sales; they do not clarify the contract's terms. George failed to present admissible evidence that the deck plate he fell from had not been replaced by Metal Sales, and accordingly the district court granted summary judgment in light of this evidence "in conjunction with the language of the lease agreement itself." As the district court was not improperly applying parol evidence, we need not address the ramifications of *Nat'l Distillers* in this case.[2]

Without supporting evidence, George's affidavit represents nothing more then a bald assertion that Metal Sales did not

replace the deck plate. George's self-serving statement that the deck plate was installed by Ryder rather than Metal Sales does not create a genuine issue of material fact in light of the Tejano and Hozak affidavits. George claims that he should not have to "prov[e] the negative" by showing that the deck plate was not replaced after the truck was delivered to Metal Sales. But it is hardly an unusual thing to require a plaintiff to provide contrary evidence in these circumstances. "Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, 'set[ting] forth specific facts showing that there is a genuine issue for trial.'" *Albiero*, 246 F.3d at 932 (quoting Fed.R.Civ.P. 56(c)).

The Tejano and Hozak affidavits defeat George's claim because they show that the deck plate was replaced by Metal Sales and, therefore, that Ryder did not warrant the deck plate's condition. George would thus have to provide admissible evidence to dispute their affidavits that the deck plate was replaced by someone other than Ryder. For example, he might have submitted an affidavit from a comparable person at Metal Sales or Ryder who would be in a position to know that Metal Sales did not replace the deck plate. He failed to do so. As a result, George's proposed alternative grounds for reversing summary judgment cannot succeed. In short, George has failed to show any genuine issue of material fact or flaw in the district court's interpretation of the Agreement.

---

2. During oral argument, George raised a different argument for why the deck plate he fell from was not Metal Sales' responsibility under the Agreement. George contends the deck plate he fell from is not the same part of the truck as the deck plate referred to in the district court opinion or in the Tejano and Hozak affidavits. Whatever the merits of this

claim may be, there is no indication of this argument in George's appellate brief, and Ryder had no opportunity to brief a response. In light of George's failure to raise the issue in his brief, it is waived. *See Great Lakes Warehouse Corp. v. Nat'l Labor Relations Bd.*, 239 F.3d 886, 891 n. 1 (7th Cir.2001).

Accordingly, the district court's grant of summary judgment is AFFIRMED.